EXHIBITS

PAGES 1 - 61

1

# Administrative

# Remedy Records

# And Supporting

# Documents

2

1103249-R

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Potararu, S          90424-083          Pgm          Cum
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.        UNIT    INSTITUTION

**Part A—REASON FOR APPEAL**

Pursuant to 18 USCS 3624(g), 3632(d) — First
Step Act, The BOP Has Failed To Issue
and Apply Federal Time Credits. The Statutory
Date For Issuance of Federal Time Credits Was
January 15, 2022. The BOP Has Failed To
meet The Statutory Requirement. The Response
From Warden And Regional office are Non-Responsive
To, Regulations Published on January 13, 2022
3/25/22    (see attached)
DATE                                    Chu V. Patgu
                                        SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____          _____
        DATE                   GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                                    CASE NUMBER: _____

**Part C—RECEIPT**

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____                    _____
        DATE                          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

                                                              Pg. 3
                                                              BP-231(13)

REQUIRED TO ISSUE AND APPLY TIME CREDITS BY JANAURY 15, 2022 AND HAS FAILED TO DO SO. THERE IS NO PROVISION IN THE LAW THAT PROVIDES THE BOP WITH ADDITIONAL TIME TO ISSUE THESE OR USE 24 MONTHS TO RELEASE AS A CUTOFF FOR SENTENCE COMPUTATION UPDATES AS THIS WOULD PENALIZE INMATES FROM APPLYING ALL FTC EARNED.

THE REGIONAL DIRECTOR'S RESPONSE TO THE BP-10 AND THE WARDEN'S RESPONSE TO THE BP-9 WERE INCOMPLETE AND DID NOT ADDRESS THE FAILURE OF THE ISSUANCE AND APPLICATION OF EARNED TIME CREDITS OF FROM DECEMBER 21, 2018 UNTIL MARCH 31ST, 2022 AS ISSUED TO OTHER INMATES AND BASED ON PUBLISHED REGULATIONS 1/13/22.

ELIGIBILITY FOR FEDERAL TIME CREDITS:

INMATES HAVE RECEIVED FEDERAL TIME CREDITS OF 15 DAYS FOR EVERY 30 DAYS BASED ON THE PRESUMPTION OR PARTICIPATION IN PROGRAMMING FOR THE PERIOD SINCE THE DATE OF ENACTMENT WITH MINIMUM PATTERN SCORE.

PROGRAM PARTICIPATION:

WORK PERFORMED AS A GED INMATE TUTOR( CFR 544.83 AND 18 USCS, 3632, 3635) FROM DECEMBER 21, 2018 TO DECEMBER 31, 2021 AS CONFIRMED IN WRITING BY EDUCATION STAFF.

OTHER INMATES ISSUED TIME CREDITS:

THE REGULATIONS PUBLISHED ON JANUARY 13, 2022 BY BOP CONFIRM THAT THE TIME CREDITS SHOULD BE ISSUED.

THEREFORE THE FTC EARNED DURING THAT SAME PERIOD MUST BE ISSUED AND APPLIED IN THE AMOUNT OF 15 DAYS FOR EVERY 30 DAYS WHICH TOTALS 585 DAYS FROM DECEMBER 21, 2018 TO MARCH 31, 2022.

Pursuant to the statutes governed under the First Step Act, I am hereby requesting issuance and application of Federal Time Credits earned for the period December 21, 2018 to March 31, 2022. I have served as an Inmate Tutor for GED pursuant to CFR 544.83 since May 2018 upon completion of inmate tutor training under Mr. Randy Clarke- Camp Education Specialist at that time. The date of enactment of the First Step Act was December 21, 2018. As mandated by the FSA ,I completed at least 2 PATTERN RISK ASSESSMENTS , have remained a MINIMUM, and am therefore eligible for 15 days of time credit for every 30 days of programming. The BOP published the proposed regulation on JANUARY 13, 2022 that indicates that " one day" of programming is one calendar day. Based on the sentence computations issued since January 13, 2022 I have earned 585 days of FTC thru March 31, 2022. I have actively engaged in FSA EBRR or Productive Activities since the passing of the law. The Education Department at FCI Cumberland has verified( attached) that I worked 160 hours per month as a GED tutor in addition to 60 hours/ month teaching Basic Literacy and Parenting for a total of 220 hours per month from December 2018 to December 2021. These hours were officially confirmed by the Education Specialist( attached progress report to Unit Team). For this specified period( 12/18 to 12/21) it equates to approximately 36 months of programming as a GED Inmate Tutor in addition to participating in other FSA programs including RDAP, AARP Finance, and Parenting.

PRODUCTIVE ACTIVITY

18 USCS 3635 defines "productive activity" as any activity that allows inmates with minimum or low recidivism to remain productive and may include delivering programs to other inmates such as literacy, reading. The Inmate Tutor is codified in the law and regulations and qualifies for earned time credit.( see regs) Moreover ,inmates enrolled in GED receive Federal Time Credit as an approved FSA program as stated in the regulation. For the period prior to the launch of the risk assessment the BOP is to provide time credits for programs that satisfy the definition of a productive activity of which tutoring and mentoring is one of them for GED. I have been responsible for more than 20 inmates receiving their GED at FPC Cumberland and have tutored hundreds. If the inmate in the class receives credit for attending than so must the inmate teaching them .

WORK ASSIGNMENT

was assigned the Inmate Tutor job in May 2018 and was required to complete training before teaching. Each inmate is required to engage in a work assignment( SEE UNIT TEAM REPORT) The intent of the FSA is to ensure that inmates engage in productive activity to reduce recidivism and the regulations afford inmates the opportunity to earn credits for programming that clearly reduces recidivism such as GED.

COMPUTATION OF PROJECTED PRE-RELEASE AND RELEASE DATE

TO DATE THE BOP HAS FAILED TO ISSUE ALL FTC EARNED AND HAS ONLY ISSUED AND APPLIED CREDITS TO EARLY RELEASE AND NOT APPLY AN BALANCE TO PRE-RELEASE CUSTODY BY LAW.

With the 585 days of FTC accrued thus far, up to 12 months(365 days) can be applied towards Supervised Release and the remainder towards pre-release custody. My current release date is 12/22/24. With the application of 12 months of time of FTC the projected release date will be 12/22/23 AND HOME CONFINEMENT DATE OF 6/22/23. As of 3/31/22 an additional 220 days of FTC must be applied whiHc moves statutory home confinement date to 11/11/22 AS OF THIS FILING.

## SCHEDULE OF FEES FOR CONSULAR SERVICES

| Item No. | Fee |
|---|---|
| 32. * * * | |
| (e) Certain adoptee applicants for replacement immigrant Visas as described in 22 CFR 42.71(b)(2) ................................... | No Fee. |
| (f) Certain immigrant visa applicants previously refused pursuant to Proclamation 9645 or Proclamation 9983, as described in 22 CFR 42.71(b)(3) ................................................................................................................................... | No Fee. |
| 34. * * * | |
| (a) Certain immigrant visa applicants previously refused solely pursuant to Proclamation 9645 or Proclamation 9983, as described in 22 CFR 42.71(b)(3) ..................................................................................................................... | No Fee. |

**PART 42—VISAS: DOCUMENTATION OF IMMIGRANTS UNDER THE IMMIGRATION AND NATIONALITY ACT, AS AMENDED**

■ 3. The authority citation for part 42 continues to read as follows:

**Authority:** 8 U.S.C. 1104 and 1182; Pub. L. 105–277, 112 Stat. 2681; Pub. L. 108–449, 118 Stat. 3469; The Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption (done at the Hague, May 29, 1993), S. Treaty Doc. 105–51 (1998), 1870 U.N.T.S. 167 (Reg. No. 31922 (1993)); 42 U.S.C. 14901–14954 (Pub. L. 106–279, 114 Stat. 825); 8 U.S.C. 1101 (Pub. L. 111–287, 124 Stat. 3058); 8 U.S.C. 1154 (Pub. L. 109–162, 119 Stat. 2960); 8 U.S.C. 1201 (Pub. L. 114–70, 129 Stat. 561).

■ 4. Section 42.71 is amended by revising paragraph (b) to read as follows:

**§ 42.71  Authority to issue visas; visa fees.**
* * * * *
(b) *Immigrant visa fees*—(1) *Payment of fees.* The Secretary of State prescribes a fee for the processing of immigrant visa applications. Except as provided in paragraphs (b)(2) and (3) of this section, an individual registered for immigrant visa processing at a post designated for this purpose by the Deputy Assistant Secretary for Visa Services must pay the fee upon being notified that a visa is expected to become available in the near future, and upon being requested to obtain the supporting documentation needed to apply formally for a visa, in accordance with instructions received with such notification. The fee must be paid before an applicant at a post so designated will receive an appointment to appear and make application before a consular officer. Applicants at a post not yet so designated will pay the fee immediately prior to formal application for a visa. A fee collected for the processing of an immigrant visa application is refundable only if the principal officer of a post or the officer in charge of a consular section

determines that the application was not adjudicated as a result of action by the U.S. Government over which the alien had no control and for which the alien was not responsible, which precluded the applicant from benefitting from the processing, or as provided in paragraph (b)(2) of this section.

(2) *Waiver or refund of fees for replacement immigrant visas for adoptees.* The consular officer shall waive the application processing fee for a replacement immigrant visa or, upon request, refund such a fee where already paid, if the consular officer is satisfied that the alien, the alien's parent(s), or the alien's representative has established that:

(i) The prior immigrant visa was issued on or after March 27, 2013, to an alien who has been lawfully adopted, or who is coming to the United States to be adopted, by a United States citizen;

(ii) The alien was unable to use the original immigrant visa during the period of its validity as a direct result of extraordinary circumstances, including the denial of an exit permit; and

(iii) The inability to use the visa was attributable to factors beyond the control of the adopting parent or parents and of the alien.

(3) *Exemption from fees for immigrant visa applicants previously refused solely pursuant to Proclamation 9645 or Proclamation 9983.* An immigrant visa applicant shall be exempt from the application processing fee and the affidavit of support review fee, if the applicant was previously denied an immigrant visa on or between December 8, 2017, and January 19, 2020; the sole ground of ineligibility was based on Proclamation 9645 or 9983; and the applicant is applying again for an immigrant visa. This paragraph (b)(3) provides only for a one-time exemption of the applicable fees per applicant.

■ 5. Section 42.74 is amended by revising paragraph (a) to read as follows:

**§ 42.74  Issuance of new, replacement, or duplicate visas.**

(a) *New immigrant visa for a special immigrant under INA 101(a)(27)(A) and (B).* The consular officer may issue a new immigrant visa to a qualified alien entitled to status under INA 101(a)(27)(A) or (B), provided that:

(1) The alien establishes that the original visa has been lost, mutilated, or has expired; or that the alien will be unable to use it during the period of its validity; and

(2) The alien pays anew the application processing fees prescribed in the Schedule of Fees (22 CFR 22.1); and

(3) The consular officer ascertains whether the original issuing office knows of any reason why a new visa should not be issued.

* * * * *

**Kevin E. Bryant,**
*Deputy Director, Office of Directives Management, U.S. Department of State.*
[FR Doc. 2022–00829 Filed 1–18–22; 8:45 am]
**BILLING CODE 4710–06–P**

**DEPARTMENT OF JUSTICE**

**Bureau of Prisons**

**28 CFR Parts 523 and 541**

**[BOP–1176P]**

**RIN 1120–AB76**

**FSA Time Credits**

**AGENCY:** Bureau of Prisons, Justice.
**ACTION:** Final rule.

**SUMMARY:** This rule codifies the Bureau of Prisons' (Bureau or BOP) procedures regarding the earning and application of time credits as authorized by the First Step Act of 2018 (FSA), hereinafter referred to as "FSA Time Credits" or "Time Credits." The FSA provides that

POTARAZU, SREEDHAR 90424083

Case 1:22-cv-01334-GLR Document 1-1 Filed 06/02/22 Page 6 of 61

eligible inmates earn FSA Time Credits toward prerelease custody or early transfer to supervised release for successfully completing approved Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) assigned to each inmate based on the inmate's risk and needs assessment. Inmates eligible to apply Time Credits under the FSA include individuals sentenced under the U.S. Code. As required by the FSA, an inmate cannot earn FSA Time Credits if that inmate is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. However, such inmates may still earn other benefits for successfully completing recidivism reduction programming, such as increased privileges (commissary, visiting, and telephone) for participation in EBRR Programs or PAs, as authorized by the Bureau.

**DATES:** This rule is effective on January 19, 2022.

**FOR FURTHER INFORMATION CONTACT:** Sarah Qureshi, Office of General Counsel, Bureau of Prisons, phone (202) 353–8248.

**SUPPLEMENTARY INFORMATION:** This rule codifies the Bureau of Prisons' (Bureau) procedures regarding First Step Act (FSA) Time Credits, as authorized by 18 U.S.C. 3632(d)(4) and Section 101 of the First Step Act of 2018 (Pub. L. 115–391, December 21, 2018, 132 Stat 5194) (FSA). The FSA provides that an eligible inmate in Bureau custody who successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment will earn FSA Time Credits, to be applied toward prerelease custody (*i.e.*, transfer to a Residential Reentry Center (RRC) or home confinement for service of a portion of the inmate's sentence) or transfer to supervised release (*i.e.*, early satisfaction of the inmate's term of imprisonment) under 18 U.S.C. 3624(g).

The proposed rule on this subject was published on November 25, 2020 (85 FR 75268). The public comment period ended on January 25, 2021. The Bureau received over two hundred and fifty responses to the publication of the proposed rule, but cannot generate a definite number of comments, as a significant portion of responses were from inmates in Bureau facilities and their family members requesting that FSA Time Credits be applied to the terms of imprisonment of particular inmates, rather than specific comments or questions regarding the proposed regulations as published.

Staff at Bureau facilities have been instructed to address specific questions regarding application of FSA Time Credits to particular inmates with those individual inmates, and we encourage those with questions regarding particular inmates to address those questions to staff at facilities where those inmates are housed, or to the regional offices with oversight for those facilities. A list of Bureau of Prisons Regional Offices can be found on the Bureau website: *https://www.bop.gov/about/facilities/offices.jsp?o=4*.

The Bureau also received a large number of comments on the proposed regulations which repeated certain common themes and issues. We have therefore consolidated the issues raised into representative excerpts from selected commenters, and address these issues below.

Additionally, on October 18, 2021, the Bureau published a document reopening the comment period of the proposed rulemaking until November 17, 2021, to solicit public comment on the limited issue of whether DC Code offenders in Bureau of Prisons custody are eligible to apply Time Credits under 18 U.S.C. 3632(d)(4), as added by the FSA. 86 FR 57612. We received thirty submissions during the reopened comment period with regard to that issue, which we discuss further below.

*COMMENT: The Bureau's definition of a "day" as one eight-hour-period of a successfully completed EBRR Program or PA is incorrect, unworkable, and/or contrary to congressional intent.*

The FSA provides that "[a] prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. 3632(d)(4)(A)(i). An inmate determined to be at a "minimum or low risk for recidivating" who, "over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. 3632(d)(4)(A)(ii). The statute does not expressly define what constitutes a "day" of successful participation. In the proposed rule, the Bureau defined it as "one eight-hour period of participation in an EBRR Program or PA that an eligible inmate successfully completes."

More than 150 commenters raised concerns with the Bureau's definition. For example, Senator Sheldon Whitehouse (D–RI) and Senator John Cornyn (R–TX) commented as follows:

The proposed rule's definition of a "day" of program participation does not adequately reward engagement with [EBRR programs] and PAs consistent with the First Step Act. . . . Because BOP programs do not run for eight hours per day, the proposed rule would require individuals to attend an EBRR or PA for several calendar days before they earned a full "day" of time credit. . . . It was not our intent as drafters of the legislation that BOP define a "day" in this way. Nor did Congress ever consider it. . . . The proposed rule's narrow definition of a "day" does not adequately incentivize program participation and reduce recidivism as intended by the First Step Act.

Congressman Hakeem Jeffries (D–NY) echoed the Senators' sentiments, stating:

[D]efining a day as eight hours of participation does not appear to be a good faith attempt to honor congressional intent. A day of successful participation is clearly a day on which a prisoner has successfully participated in a program or productive activity. BOP[']s definition of [a] day would dramatically reduce the amount of time credits an individual can earn.

*RESPONSE:* After carefully considering the comments received, the Bureau agrees that a change is warranted. The proposed definition of a day of successful participation was inconsistent with the goals of the FSA and would have been logistically burdensome to calculate and administer. The Bureau is thus adopting a simpler FSA Time Credits program award model that will more fully encourage and reward participation in evidence-based recidivism reduction programs and productive activities.

In enacting the FSA, Congress made clear that Time Credits should be broadly applicable to a wide range of inmates for a broad range of activities to maximize their opportunities to reduce recidivism. The proposed definition, however, would have meant that inmates could successfully do everything asked of them as part of their recommended programming for multiple days (*e.g.*, two hours each day for four days), but be credited for only one day of successful participation.

In addition, the proposed definition would have required Bureau staff to not only track inmate participation in recommended programming, but also break down participation time into individual hours of work, and then aggregate time spent completing certain programming with other time spent completing other programming. This approach would have varied the earning of Time Credits by program factors such as intensity, length, and duration that could have been confusing to inmates, burdensome for staff to administer, and inconsistent with the general goal of awarding Time Credits in a consistent manner to inmates who are participating in the full range of programming

POTARAZU, SREEDHAR 90424083

Case 1:22-cv-01334-GLR Document 1-1 Filed 06/02/22 Page 7 of 61

recommended to them based on the results of their risk and needs assessments.

The final rule adopts a more straightforward and more administratively manageable approach that is consistent with the FSA's goal of promoting successful participation in EBRR Programs and PAs. For every thirty-day period that an eligible inmate successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, the inmate will earn ten days of FSA Time Credits. If the inmate is determined to be at a minimum or low risk for recidivating and can maintain that risk level for the most recent two consecutive risk and needs assessments, that inmate may earn an additional five days of FSA Time Credits per thirty-day period.

An eligible inmate must successfully participate in programs and activities that the Bureau recommends based on an individualized risk and needs assessment to earn Time Credits. An inmate will not be considered to be successfully participating in that inmate refuses to participate in or otherwise violates conditions, rules, or requirements of EBRR programs or PAs recommended based on the inmate's risk and needs assessment. However, temporary interruptions in participation that are unrelated to an inmate's refusal to participate or other violation of programming requirements, or that are authorized by the Bureau, such when a recommended program or activity is unavailable or at full enrollment, will not affect the inmate's ability to earn Time Credits.

If an eligible inmate refuses to participate in the recommended program or activity, engages in misconduct that results in removal from the program or activity through placement in restrictive housing, or disrupts or fails to follow the conditions, parameters, or rules of the program or activity, accrual of Time Credits is paused until the inmate complies with programming and or completes the disciplinary sanction. This methodology is intended to guide inmates back to the appropriate pro-social goals of programming and act as a deterrent for future misconduct, giving inmates a direct incentive to maintain clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541).

By clarifying the method for awarding Time Credits in this manner to ensure it furthers Congressional intent of the statute, the Bureau hopes to increase the amount of FSA Time Credits that may be awarded to eligible inmates.

*COMMENT: FSA Time Credits should be earned for programs successfully completed on or after December 21, 2018, the date of the enactment of the First Step Act, instead of January 15, 2020, as indicated in the proposed rule.*

More than 150 commenters raised this issue, including Senator Sheldon Whitehouse (D–RI) and Senator John Cornyn (R–TX), who wrote:

The Act provides that "[a] prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed . . . prior to the date of enactment of this subchapter." 18 U.S.C. 3632(d)(4)(B). . . . The proposed rule, however, states that an individual may only earn time credits for programs "successfully completed on or after January 15, 2020"—more than a year after the date of enactment. Nor does the proposed rule explain why individuals are not eligible to earn time credits for programs completed between December 21, 2018 and January 15, 2020.

Congressman Hakeem Jeffries (D–NY) also commented on this issue, noting that the regulation's proposed start date for earning time credits of January 15, 2020, "serves no clear purpose and is inconsistent with the text of the First Step Act, which states that credit may not be earned for programs completed prior to the date of enactment of this subchapter, which was December 21, 2018."

*RESPONSE:* As the commenters correctly note, the FSA explicitly states that Time Credits may not be earned for participation in programming prior to the date of the FSA's enactment. The statute is silent, however, as to the specific date on which inmates should begin to earn Time Credits. Instead, the statute expressly contemplates a phased-in approach and sets specific timelines and benchmarks for implementation.[1] This phased-in approach is appropriate and warranted, given that the FSA has been the most impactful congressional action taken concerning the Bureau of Prisons in recent years, requiring major changes to existing systems and processes, and the development of new systems, and

changes that apply to approximately 130,000 current inmates.

Under this phased-in approach, the Attorney General was required to develop and release the risk and needs assessment system within 210 days from the date the FSA was signed into law, December 21, 2018. The new risk and needs assessment tool, called the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN), was subsequently released on July 19, 2019, in accordance with the FSA. Additional modifications of PATTERN occurred after feedback was received from external stakeholders and the FSA-established Independent Review Committee.

The FSA required that as part of the implementation period, within 180 days of the risk and needs assessment system's release date, the Bureau would conduct initial risk and needs assessments for the inmate population and begin expanding the EBRR Programs and PAs necessary to effectively implement the system.[2] The Bureau assigned an initial PATTERN risk level to each inmate by the statutory deadline of January 15, 2020. And, notably, the Bureau implemented the FSA's directive at 18 U.S.C. 3621(h)(2)(A), to assign inmates to EBRR Programs or PAs by January 15, 2022 (two years after the date by which the agency completed risk and needs assessments for all inmates) well before that date.

Because the FSA contemplates a phase-in period during which the risk and needs assessment system could be developed, and because the FSA is silent regarding a specific date when eligible inmates must begin earning Time Credits, the Bureau exercised its discretion and adopted the position in the proposed rule that it would be reasonable for the Bureau to begin allowing inmates eligible under the FSA to earn FSA Time Credits *after* the risk and needs assessment and relevant programming were established, *i.e.,* on January 15, 2020, the date on which initial evaluations under the new risk and needs assessment system were completed. However, in light of the comments submitted, the Bureau acknowledges that because the FSA is silent regarding a specific date when eligible inmates must begin earning Time Credits, yet explicitly prohibits the earning of Time Credits for participation prior to the date of enactment, the statute could also be interpreted to allow for eligible inmates to earn Time Credits as of December 21, 2018, the date of enactment of the FSA.

---

[1] *See* 18 U.S.C. 3621(h)(1)(C), referring to the "risk and needs assessment tools necessary to effectively implement the System over time," and sec. 3621(h)(2)(A), requiring that EBRR Programs and PAs be provided "before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner. . . ." The Bureau completed risk and needs assessments for every inmate in Bureau custody on January 15, 2020, and, therefore, as indicated by the FSA, had until January 15, 2022, to ensure that EBRR Programs and PAs are provided to eligible inmates in Bureau custody. The Bureau was already providing those programs and activities to eligible inmates well in advance of that date.

[2] *See* 18 U.S.C. 3621(h)(1).

The case law on this issue is mixed, but some courts have concluded that this reading is in fact the better one. With regard to participation in programming completed after the date of the FSA's enactment, but before completion of all inmate risk and needs assessments on January 15, 2020, some courts have held that eligible inmates should be awarded FSA Time Credits in addition to the pre-FSA incentives already offered by the Bureau. Courts in the Districts of New Jersey and Oregon have directed the Bureau to award Time Credits under the FSA for the successful completion of programs and activities occurring before January 15, 2020, but on or after December 21, 2018, the FSA's date of enactment. *See, e.g., Cazares v. Hendrix,* 20–cv–2019 (D. Or. Nov. 9, 2021); *Goodman v. Ortiz,* 2020 WL 5015613, at \*6 (D.N.J., Aug. 25, 2020) (holding inmates are currently entitled to FSA Time Credits that have been properly earned); *Hare v. Ortiz,* 2021 WL 391280, at \*7 (D.N.J. Feb. 4, 2021) (limiting award of Time Credits to those earned for programs completed on or after the date of enactment of the FSA); *Gallo v. Ortiz,* Civ. No. 20–16416 (D.N.J., filed Feb. 16, 2021) (District Court required the Bureau to calculate Time Credits based on 2018 date).[3] Awarding Time Credits as of the date of enactment may also be more consistent with the FSA's goals of reducing recidivism through participation in programming and activities, and allowing inmates to work towards early release. From a fairness perspective, the Bureau also acknowledges that an inmate who has been consistently participating in programming, such as working to obtain his or her GED while the FSA was in effect, between December 21, 2018 (the date of the

[3] Most courts that have analyzed this issue, however, have found it reasonable for the Bureau to begin awarding Time Credits for successful completion on or after January 15, 2020, as opposed to holding that inmates are entitled to FSA Time Credits for successful completion of EBRR Programs and PAs occurring before that date but on or after December 21, 2018. *See, e.g., Cohen v. United States,* No. 20–cv–10833, 2021 WL 1549917, at \*6 (S.D.N.Y. Apr. 20, 2021) ("[T]he statute does not require the BOP to begin awarding ETCs [earned time credits] during the phase-in period."); *Kennedy-Robey v. Warden, FCI Pekin,* No. 20–cv–1371 (C.D. Ill. Mar. 2, 2021) (ECF No. 14) ("Not only is the BOP's decision to delay awarding credits permitted under the statute, the BOP has legitimate reasons for desiring to do so."); *Llewlyn v. Johns,* No. 5:20–cv–77, 2021 WL 535863 (S.D. Ga. Jan. 5, 2021); *Herring v. Joseph,* No. 4:20–CV–249, 2020 WL 3642706, at \*1 (N.D. Fla. July 6, 2020); *Holt v. Warden,* 4:20–CV–04064–RAL, (D.S.D. May. 13, 2021; *Fleming v. Joseph,* No. 3:20CV5.990–LC–HTC, 2021 WL 1669361 (N.D. Fla. Apr. 7, 2021) (report and recommendation). *See also Bowling v. Hudgins,* 2020 WL 1917490 (N.D. Va. Apr. 20, 2020); *Allen v. Hendrix,* 2020 WL 890396 (E.D. Ark. Feb. 24, 2020).

enactment of the FSA), and January 15, 2020 (the date risk and needs assessments were completed on all Bureau inmates), should be rewarded for that effort.

While the Bureau continues to consider the FSA amenable to the interpretation reflected in the proposed rule, it acknowledges that the statute is ambiguous, and in light of the FSA's purposes and fairness considerations, it exercises its discretion to adopt the reading urged by the majority of commenters. Therefore, the Bureau amends this final rule to allow inmates eligible under the First Step Act to receive retroactive Time Credits for programming and activities they participated in starting on December 21, 2018, the date of the FSA's enactment. In determining how to award FSA Time Credits during the period before all individualized risk and needs assessments had been completed, the Bureau faces administrative challenges. Consistent with the phased-in approach contemplated by the FSA, the Bureau did not have mechanisms in place to methodically track participation in EBRRs and PAs until January 15, 2020, because comprehensive uniform tracking codes did not exist. In addition, it was not until that date that the Bureau had completed individualized risk and needs assessments for every inmate— and thus had a basis to conclude that there was an evidence-based reason to assign a particular program to, or recommend particular activities for, an inmate in order to reduce a particular inmate's risk of recidivism. Thus, in many instances, inmates were participating in programs for reasons other than addressing a criminogenic need.

Due to these administrative difficulties, for inmates participating in programming after the date of the FSA's enactment, but before the date that Bureau had completed all risk and needs assessments (December 18, 2018, to January 14, 2020), it is not feasible for the Bureau to connect individual inmate participation in programming to individualized risk and needs assessments, since the risk and needs assessment tool did not exist until well after the date of the FSA's enactment. Instead, for inmate participation in programming during this period of time, the Bureau will exercise its discretion to award FSA Time Credits to inmates otherwise deemed eligible under the First Step Act by applying the same criteria as that applied to inmate participation in authorized EBRR programs or PAs recommended based on a risk and needs assessment after January 2020 to determine the inmate's

retroactive Time Credit balance. Eligible inmates will be afforded a presumption of participation for the period between December 21, 2018, and January 14, 2020 and be awarded Time Credits accordingly. Inmates will not receive credit for any period in which they were in a special housing unit, in a designation status outside the institution, temporarily transferred to the custody of another Federal or non-Federal government agency, in mental health/psychiatric holds (either court-ordered mental health/psychiatric evaluations or situations in which mental health or psychiatric evaluation or treatment require an inmate to be designated outside or away from the inmate's "home" facility within the Bureau), or for refusing mandatory programming, as further explained below.

*COMMENT: There are no safeguards in the risk and needs assessment system to prevent racial discrimination or racial disparities.*

Several commenters were concerned about the potential for racial and ethnic biases or disparities in the risk and needs assessment tool used by the Bureau of Prisons.

*RESPONSE:* The Department of Justice issued the Risk and Needs Assessment System (RNAS) mandated by the First Step Act, known as PATTERN, on July 19, 2019. *See The First Step Act of 2018: Risk and Needs Assessment,* U.S. DEP'T OF JUSTICE: OFFICE OF THE ATTORNEY GENERAL, *https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf* (July 2019). The Department's release of PATTERN was followed by a comment period during which the Department received approximately 200 comments and statements and held two listening sessions. On November 19, 2019, the Attorney General met with the Independent Review Committee (IRC) created by Section 107 of the FSA to discuss proposed changes to PATTERN, as required by 18 U.S.C. 3632.

The Attorney General then announced enhancements to PATTERN in a document entitled *The First Step Act of 2018: Risk and Needs Assessment System—UPDATE, https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf* (January 2020) (2020 Update). In this 2020 Update, and in response to concerns arising from potential racial disparities, the Department instituted several recommended changes to the tool. Later, in 2021, the Department also implemented a more standardized

POTARAZU, SREEDHAR  90424083

Case 1:22-cv-01334-GLR Document 1-1 Filed 06/02/22 Page 9 of 61

For instance, one commenter indicated that while the requirement to successfully complete a program before earning Time Credits "may make sense for educational classes, certificate-based programs, or fixed length productive activities, it should not apply to prison jobs that would require ongoing accumulation of Time Credits. A prison job is not a 'program to complete,' has no set duration, and its success is based on continued employment and supervisor evaluations."

Another commenter suggested that those "participating in the Residential Drug[] Abuse Program (RDAP), should receive (16) program hours per day, 2 eight-hour program days for 1 proposed day, . . . [because] RDAP participants 'live' in a therapeutic community."

Additionally, Senator Sheldon Whitehouse (D–RI) and Senator John Cornyn (R–TX) commented as follows:

As BOP finalizes and implements its proposed rule, it should ensure that individuals are assigned to categories of programs that meet their needs, rather than specific programs, to allow for maximum participation in credit-earning EBRRs and PAs. . . . Each program at a facility should be appropriately categorized, including faith-based programs. Such flexibility will ensure that individuals can freely choose to participate or not participate in faith-based options. It is also critical to allow for greater program access as BOP expands its offerings, as some programs have limited capacity or may not be offered at particular facilities.

*RESPONSE:* The Bureau agrees with these commenters, and has structured its programs and work assignments to promote participation and flexibility. New funding allotments will enhance the Bureau's course offerings, largely by permitting it to increase capacity through hiring additional staff, and will also serve to bolster the Bureau's resources, thereby improving its ability to carry out the FSA Time Credits program. The Bureau began to enhance programming immediately after the FSA's enactment, using then-current appropriations from FY 2019 not allotted specifically for FSA implementation, and continued to grow its programming offerings with budget allotments as authorized from FY 2020 appropriations.

In *The Attorney General's First Step Act Section 3634 Annual Report,* U.S. DEP'T OF JUSTICE: OFFICE OF THE ATTORNEY GENERAL, *https:// www.bop.gov/inmates/fsa/docs/ 20201221_fsa_section_3634_report.pdf* (December 2020) (2020 Annual Report), the Bureau established a review process to consider externally submitted programs for potential inclusion on the approved EBRR Program/PA list. *Id.* at

17. The Bureau currently engages in partnerships with external organizations to recruit community volunteers to assist with inmate reentry and educational programs. Consistent with the goal of supporting and expanding volunteer activities at all institutions, on June 25, 2019, the Bureau provided guidance to all Wardens about the importance and use of partnerships under the FSA. Specifically, the Assistant Directors for the Office of General Counsel and Reentry Services Divisions issued guidance on collaboration with outside organizations pursuant to the FSA. This memorandum provided information on the FSA's statutory requirements, the Bureau process for establishing partnerships, equitable treatment of similar organizations, and tracking of partnerships.

On September 19, 2019, voluntary partnerships were in place at all 122 Bureau institutions. During FY 2019, 5,939 individuals volunteered 110,489 hours at various institutions. During FY 2020 (as of September 10, 2020), 5,978 volunteers and contractors had provided 157,752 hours at various institutions. The increase in volunteer hours can, in part, be attributed to staff efforts to increase partnerships pre-COVID–19, and changes made to the Bureau volunteer tracking system. *Id.* at 37.

In 2020, the Bureau created unique identifier codes for every Bureau program. These codes allow Bureau to track inmates' program enrollment, participation, and completion. This information can then be compared to needs assessment information and used as a method for assessing capacity. Unfortunately, because of the global pandemic, the Bureau has not been able to program as it would under normal conditions.

The Bureau assesses 12 broad need areas plus dyslexia, and programs are matched to each of these needs. As normal operations resume, the Bureau will be able to accurately track whether inmates sign up for the programs that match their needs, and whether the programs are offered with enough capacity to complete them at the appropriate times during their sentences. While the Bureau's current list of over 70 EBRR Programs and PAs addresses most areas of need, some improvements have been made even during the pandemic. For example, the Bureau created better quality and more standardized materials that provide more consistent program delivery. Additionally, a more intensive program addressing criminal cognition is in development to account for this

highly prevalent need in Bureau facilities. *Id.* at 19–20.

Also, several programs and activities mentioned by the commenters as items that should be included in the list of approved programs are, in fact, already on the list. *The First Step Act Approved Programs Guide,* available on the Bureau's website at *https:// www.bop.gov/inmates/fsa/docs/2021_ fsa_program_guide.pdf* (Programs Guide), contains a program description, institution locations, needs addressed by each program offered, and the department responsible for program delivery (*e.g.,* Education, Psychology).

The Programs Guide indicates that offered programs and activities "will vary based on the needs of the sentenced population" at a given location. This helps to explain, in part, why some programs and activities may not be available at all facilities. However, as the Bureau continues to expand its offerings, the Programs Guide continues to expand, and will be updated annually.

With regard to several programs and activities specifically mentioned by commenters:

*UNICOR:* Employment in Federal Prison Industries (FPI, also known by its trade name, UNICOR) is included in the Programs Guide as an EBRR Program.

*RDAP:* The Residential Drug Abuse Treatment Program (RDAP), is included in the Program Guide as an EBRR Program.

*Online or correspondence college courses:* The Programs Guide includes Post-Secondary Education programming, and explains that "[c]ollege level classes are provided by credentialed instructors from the community who deliver coursework leading to the Associates or Bachelors degree," and that "[s]pecific prerequisites for each program are determined by the school providing the service." *See Programs Guide* at 23. This program, delivered by Education staff or appropriately credentialed contractors, allows for online or correspondence college courses, as authorized and credentialed by the Bureau's Education staff.

*Religious services and programming:* The Programs Guide describes several faith-based programs and activities currently available at all Bureau facilities, including the Threshold Program, a faith-based reentry program (*id.* at 32), and Embracing Interfaith Cooperation, a PA which fosters interfaith dialogue and understanding to counter religious discrimination and extremism (*id.* at 36).

Also, the Bureau's longstanding Life Connections Program (LCP), a

POTARAZU, SREEDHAR 90424083

residential, multi-faith-based reentry program open to inmates of all religious traditions and those with no faith affiliation, uses contract partners to provide religious services, while community volunteers serve as mentors to inmate participants. This program is available at six Bureau facilities. *See* 2020 Annual Report, *supra,* at 37–38.

As the Bureau's FSA implementation budget appropriations increase and necessary COVID–19 pandemic-related health and safety restrictions ease, the Bureau will continue its efforts to expand EBRR programming and PA offerings available at Bureau facilities for eligible inmates. Furthermore, as noted above, the Bureau has changed the proposed regulation to a more inclusive model, whereby FSA Time Credits may be earned if an eligible inmate is successfully participating in EBRR Programs and PAs recommended based upon his or her risk and needs assessment. Also, inmates will not be penalized if specifically recommended EBRR Programs or PAs are unavailable to them or at full enrollment at their facilities. As the Bureau continues to evaluate these and other types of programs and activities, the list of EBRR Programs and PAs for which inmates may earn FSA Time Credits will likewise increase.

*COMMENT: FSA Time Credits should be earned for successful participation, not only for successful completion.*

Many commenters opined that FSA Time Credits should be awarded on an ongoing basis, during *participation* in EBRR programming and PAs, instead of after successful *completion* of an EBRR Program or PA. One commenter wrote that

[b]y focusing only on completion, BOP diminishes the value of participation and weakens the incentive structure Congress enacted. Indeed, there are myriad situations where people would successfully participate in an approved program and—through no fault of their own—be prevented from, or delayed in, completing it. Transfers, program resource and staffing limitations, and facility movement restrictions all impact program completion, as do length of sentence, program availability, and waitlists. Individuals have no control over completion if, for example, their facility is locked down, or if programs are indefinitely suspended due to a pandemic. Congress created the earned time credit system to encourage personal responsibility. BOP's all-or-nothing rule that fails to acknowledge participation is inconsistent with this intent. BOP should revise the proposed rule to allow individuals who successfully participate in programming to earn time credits.

*RESPONSE:* The Bureau agrees with these comments. As indicated previously, the Bureau is altering and

expanding its method for awarding Time Credits.

The concern of the commenters regarding participation in programming echoes the Bureau's longstanding policy of encouraging inmate reentry programming and productive activities throughout each inmate's incarceration, which is consistent with the FSA's goal of attaining maximum recidivism reduction. The Bureau will continue to emphasize the need for full and successful participation in EBRR programs and PAs, as recommended for each inmate, to achieve the maximum award of FSA Time Credits to the maximum number of eligible inmates.

Toward that end, the Bureau has developed the simpler model which it now adopts for the FSA Time Credits program. Under this model, each eligible inmate earns Time Credits while participating in recommended EBRR Programs and PAs. Time Credits for successful participation are awarded at the end of each thirty-day period. By altering the scheme for awarding Time Credits in this manner, the Bureau hopes to increase the amount of FSA Time Credits that may be awarded to the maximum number of eligible inmates. Inmates must participate in all programs and activities that the Bureau recommends based on an individualized risk and needs assessment to be considered to have successfully participated in recommended EBRR Programs and PAs for purposes of earning Time Credits.

It is important to note, however, that temporary interruptions in participation that are unrelated to an inmate's refusal or other violation of programming requirements, such as the unavailability of a recommended program or activity or its full enrollment, or interruptions authorized by the Bureau, will not affect the inmate's ability to earn Time Credits. An inmate's ability to earn FSA Time Credits will be affected if the inmate refuses to participate in the recommended programming or productive activity, engages in misconduct that results in removal from the program or activity through placement in restrictive housing, or disrupts or fails to follow the conditions, parameters, or rules of the activity. In the event that the inmate is found to have committed any of these violations, accrual of Time Credits is paused until the inmate complies with programming conditions, parameters, or rules, or completes the disciplinary sanction.

For example, the Bureau may permit an inmate to continue earning FSA Time Credit if programming is briefly interrupted due to an instructor's

illness, which results in the instructor canceling class for the day. Another possible example might be a brief interruption caused by an inmate requiring to be absent from programming for a day or two due to illness or medical treatment. In such circumstances, the Bureau may review whether or not the illness or medical treatment is attributable to factors over which the inmate may exercise control (possible drug overdose, injuries sustained while fighting, etc.), whether the conduct is a disciplinary offense, or whether it is excusable behavior and therefore may be authorized. The Bureau will strive to reach an equitable result when calculating time in program participation and circumstances both beyond and within the inmate's control.

Accordingly, unless the inmate formally declines recommended programming addressing his or her unique needs, or is not participating in any activities, the assumption is that the eligible inmates will be earning Time Credits and fully participating in recommended programming. The regulation indicates that accrual of Time Credits may be suspended in certain situations when the inmate is unable to participate in recommended programming, including, but not limited to, situations such as:

• Placement in a Special Housing Unit;

• Designation status outside the institution (*e.g.,* for extended medical placement in a hospital or outside institution, court appearances, an escorted trip, a furlough, etc.);

• Temporary transfer to the custody of another federal or non-federal government agency (e.g., on state or federal writ, transfer to state custody for service of sentence, etc.);

• Placement in mental health/ psychiatric holds; or

• "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

Inmates who decline to participate in a recommended voluntary EBRR or PA (*i.e.,* inmates that "opt out") will not be considered to be refusing a program assignment for the purposes of disciplinary prohibited act code violations, but will merely be excluded from benefits or privileges of FSA Time Credit Program participation. For example, declining to take a recommended anger management course will prevent an inmate from earning FSA Time Credits, but will not in itself constitute a disciplinary prohibited act code violation. Inmates that refuse a formal assignment,

POTARAZU, SREEDHAR 90424083

10

however, will also be held responsible for any attendant disciplinary prohibited act code violations, *e.g.*, failing to report to institution work detail.[4]

COMMENT: *FSA Time Credits should be applied to an inmate's transfer to supervised release (to shorten a term of imprisonment).*

Some commenters indicated that they were concerned that Time Credits would not, in fact, be applied to transfer to supervised release at all, but instead might only be applied to prerelease custody, noting that the proposed rule "does not address the procedures for determining whether an individual inmate will have FSA Time Credits applied toward prerelease custody, early transfer to supervised release, a combination of both, or neither; this proposed rule only addresses the procedures for earning, awarding, loss, and restoration of FSA Time Credits."

RESPONSE: As stated, under the FSA, an eligible inmate who successfully participates in an EBRR Program or PA recommended by staff based on the inmate's risk and needs assessment may earn FSA Time Credits to apply toward prerelease custody or transfer to supervised release. Eligible inmates may earn 10 days of Time Credits (and, if maintaining a low or minimum risk status, an additional 5 days of Time Credits) for every 30-day period of successful participation in EBRR Programs or PAs.

However, under the FSA (18 U.S.C. 3624(g)), even if earned, Time Credits may not be applied to prerelease custody until:

• The amount of earned Time Credits is equal to the remainder of the inmate's imposed term of imprisonment;

• The inmate has demonstrated a reduced risk of recidivism or maintained a minimum or low recidivism risk during his or her term of imprisonment;

• The remainder of the inmate's imposed term of imprisonment has been computed under applicable law (*e.g.*, Good Conduct Time Credit under 28 CFR part 523 has been applied, eligibility for early release consideration under Residential Drug Abuse Treatment Program regulations in 28 CFR part 550 has been evaluated, etc.); and

• The inmate has been determined to be at a minimum or low risk of recidivating based on his or her last two assessments, or has had a petition to be

transferred to prerelease custody approved by the warden.

Similar requirements exist under the FSA for application of earned Time Credits to transfer to supervised release. Time Credits may not be applied to transfer to supervised release under 18 U.S.C. 3624(g) unless:

• The amount of earned Time Credits is equal to the remainder of the inmate's imposed term of imprisonment;

• The inmate's sentence includes a period of supervised release to be served after his or her term of imprisonment;

• The inmate's latest risk and needs assessment shows that he or she is at a minimum or low risk of recidivating; and

• The application of Time Credits would not result in starting the period of supervised release more than 12 months before he or she would otherwise be eligible to do so (*i.e.*, any amount of earned Time Credits in excess of 12 months would be applied to prerelease custody).

See Nathan James, U.S. Congressional Research Service, The First Step Act of 2018: An Overview (2019), at 5–6.

The Bureau assures commenters that FSA Time Credits will be applied to early transfer to supervised release, as authorized by the FSA in 18 U.S.C. 3632(d)(4)(C) and 18 U.S.C. 3624(g). *See* 2020 Annual Report at 39–44. The Bureau intends to adhere to the parameters of the FSA to permit application of Time Credits toward transfer to supervised release pending development of policy, in individual cases as appropriate.

COMMENT: *Earning FSA Time Credits should continue in Residential Reentry Centers and/or while in home confinement.*

Many commenters raised an issue that was articulated by Senator Sheldon Whitehouse (D–RI) and Senator John Cornyn (R–TX) as follows:

The proposed rule also provides that "FSA Time Credits can only be earned while an inmate is in a Bureau facility, and will not be earned if an inmate is in a Residential Reentry Center or on home confinement." The proposed rule does not cite to any authority for this restriction, and this interpretation is not consistent with the goals of the First Step Act.

Allowing individuals to earn time credits while in RRCs is authorized by the First Step Act. The Act provides that "[t]ime credits earned . . . by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release." It defines "prisoner" as "a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons."

Because "[p]re-release inmates at an RRC remain in Federal custody while serving a sentence imposed by a U.S. District Court or DC Superior Court," they are "prisoners" for the purposes of the First Step Act. Nor does the First Step Act distinguish between "prisoners" who are serving their sentence in a BOP institution, in an RRC, or on home confinement in describing the time credit program. By its own terms, the statute allows BOP to award time credits to individuals incarcerated in an RRC toward time in supervised release.

Allowing individuals incarcerated in an RRC to earn time credits by participating in EBRRs would further the purposes of the First Step Act. RRCs offer substance abuse treatment and other programs similar to those offered in BOP institutions. There is no reason to believe that a program offered in an RRC will reduce recidivism any less than one offered to an individual in prison. In fact, such programs may be more effective, as individuals are close to release from custody and can begin putting lessons learned into practice as they transition home. BOP should revise the proposed rule to allow individuals to earn time credits while in an RRC.

Congressman Hakeem Jeffries (D–NY) also stated, "I see no reason to make individuals in Residential Reentry Centers (RRCs) or in home confinement ineligible to earn time credits. . . . Congress could have used a narrower definition or explicitly excluded certain categories of individuals based on where they serve their sentence, but it chose not to do so."

RESPONSE: After carefully considering the comments received, the Bureau agrees that inmates in prerelease custody—whether in a residential reentry center (RRC) or on home confinement—are eligible to earn FSA Time Credits under 18 U.S.C. 3632(d)(4)(A), which they could presumably apply, under 18 U.S.C. 3632(d)(4)(C), toward transfer to supervised release.

The practical effect of allowing eligible inmates to keep earning Time Credits while in prerelease custody (RRCs) will likely be limited, however, for several reasons. First, the Bureau intends to transfer eligible inmates who satisfy the criteria in 3624(g) to supervised release to the extent practicable, rather than to prelease custody. The Bureau therefore anticipates that the total population of eligible inmates in RRCs or home confinement will be small.

Second, as a practical matter, programming and services for inmates in RRCs or home confinement will often be provided off-site or by a third-party provider, which makes tracking successful participation more difficult. For example, community-based substance use treatment programs referred to by the Senators in their

<hr/>

[4] *See* 28 CFR 541.3, Table 1—Prohibited Acts and Available Sanctions: Moderate Severity Level Prohibited Acts, code 306: "Refusing to work or to accept a program assignment."

# Appendix 1: The BOP's Response



**U.S. Department of Justice**

Federal Bureau of Prisons

---

*Office of the Director*                    *Washington, D.C. 20534*

November 3, 2021

MEMORANDUM FOR RENE ROCQUE LEE
                ASSISTANT INSPECTOR GENERAL
                EVALUATION AND INSPECTIONS

FROM:           M.D. Carvajal
                Director

SUBJECT:        Response to the Office of Inspector General's (OIG)
                Formal Draft of a Management Advisory Memorandum:
                Impact of the Failure to Conduct Formal Policy
                Negotiations on the Federal Bureau of Prisons'
                Implementation of the First Step Act and Closure of
                OIG Recommendations (A-2020-003-A)

The Bureau of Prisons (BOP) appreciates the opportunity to
provide a formal response to the Office of the Inspector
General's above-referenced Management Advisory Memorandum. The
BOP has completed our review of the Memorandum and provides our
comments with regard to both recommendations:

The BOP reiterates that our decision-making regarding meeting
virtually with the Union to conduct policy negotiations during
the COVID-19 pandemic was consistent with directives from the
both the CDC and OMB to not only mitigate disease transmission
but to prevent infection. In addition to CDC and OMB guidance,
on February 16, 2021, the Department of Justice (DOJ) issued its
*2021 DOJ COVID-19 Workforce Safety Plan* which stated only
*"mission-critical travel in support of Primary Mission Essential
Functions or Mission Essential Functions is permissible."*
Further, the *Plan* also states that *"[I]n-person meetings should
be avoided wherever possible . . . and when they must be held,
they shall be limited to fewer than ten individuals . . ."*
Because BOP's policy ground rules permit the Union ten
representatives, this Department guidance would have resulted in

The following FSA-related policies and guidance are awaiting Rules action:

- First Step Act Time Credits
- Work Programs for Inmates, FPI (deferred compensation)

Once regulations are published, the implementing policy will be negotiated accordingly.  BOP reiterates that while these policies may be awaiting finalization, they are not hampering or impeding efforts to implement FSA programs and services.  With regard to FSA Time Credits, the Correctional Programs Division is monitoring the accrual of time credits such that inmates are reviewed twenty-four months in advance of their release as to their time credit accrual to ensure that such time is considered for purposes of their pre-release confinement date.

13

SREEDHAR POTARAZU, 90424-083
CUMBERLAND FCI      UNT: CAMP PGM     QTR: P03-172L
14601 BURBRIDGE RD SE
CUMBERLAND,   MD 21502

14

REGIONAL ADMINISTRATIVE REMEDY APPEAL
Part B - Response

Date Filed: February 15, 2022          Remedy ID No.: 1103249-R2

You appeal the Warden's response to your administrative remedy.
You are requesting to receive Federal Time Credits (FTC) under the
First Step Act for completed programs.

The Bureau of Prisons has established procedures to begin applying
FTC in January 2022.  While eligible inmates with all PATTERN risk
scores may earn FTC, only those with Low and Minimum scores are
eligible to apply them at this time.  Inmates must have a
Supervised Release term following their incarceration in order for
FTC to be applied toward their release.

It is expected to take several weeks to update all necessary
sentence computations.  Updates of sentence computations will be
prioritized based on release dates, beginning with inmates in
community placement.

This response is for informational purposes.  If you are
dissatisfied with this response, you may appeal to the General
Counsel, Federal Bureau of Prisons, 320 First Street, N.W.,
Washington, D.C. 20534.  Your appeal must be received in the
General Counsel's Office within 30 days from the date of this
response.


MAR 1 5 2022
_____          _____
Date                             J. C. Petrucci
                                 Regional Director
                                 Mid-Atlantic Region

15

U.S. Department of Justice

Federal Bureau of Prisons

Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __POTARAZU, SREEDHAR V__  __90424-083__  __P__  __FCI CUMBERLAND__
        LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL**

THE WARDEN'S RESPONSE TO THE BP-9 WAS INCOMPLETE. I AM PLEASE REQUESTING ISSUANCE AND APPLICATION OF FEDERAL TIME CREDITS PURSUANT TO USCS 18 3632, 3635, 3624(g) FOR WORK PERFORMED THAT WAS ASSIGNED AS A GED/LITERACY AND PARENTING INMATE TUTOR (PURSUANT TO CFR 544.83) AND BOP PS 5300.00. THE PERIOD FOR WHICH FTC SHOULD BE ISSUED IS 12/21/18 TO 11/30/21 FOR 220 HOURS OF WORK PER MONTH AS CONFIRMED BY EDUCATION SPECIALIST IN OFFICIAL RECORD TO UNIT TEAM BY EDUCATION SPECIALIST. THE FTC CREDIT FOR THE PERIOD IS A TOTAL OF 17 MONTHS (CALCULATION/ BRIEF ATTACHED). THESE CREDITS MUST BE ISSUED BY LAW BY 1/18/22.

__12/17/21__                                    __(S. Potarazu)__
        DATE                              SIGNATURE OF REQUESTER

**Part B - RESPONSE**





_____         _____
        DATE                              REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                CASE NUMBER: __1163249-R1__

— — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — —

**Part C - RECEIPT**

                                          CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____         ✿         _____
        DATE                              SIGNATURE, RECIPIENT OF REGIONAL APPEAL

PRINTED ON RECYCLED PAPER

USP LVN                                                BP-230(13)
                                                       JUNE 2002

FEDERAL CORRECTIONAL INSTITUTION, CUMBERLAND, MARYLAND
PART B: RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #1103249-F1

This is in response to your Request for Administrative Remedy in which you request
issuance of Federal Time Credits for work as a GED/Literacy/Parenting inmate tutor for
the time period of December 21, 2018, to November 30, 2021, for a total of 17 months of
time credit.

Our review into the matter indicates that as of November 27, 2021, you have earned
34.0625 Federal Time Credit (days), which equals 30 Credits earned.   Updated reports
are generated by the Central Office on a monthly basis.

Based on the foregoing, this response is being provided for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director,
Bureau of Prisons, Mid-Atlantic Region, 302 Sentinel Drive, Suite 200, Annapolis
Junction, Maryland 20701. Your appeal must be received in the Mid-Atlantic Regional
Office within 20 days of this response.

15 Dec 21
_____
Date

_____
H. Allen Beard, Jr., Warden

17

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: POTARAZU, SAEEDHAR V    90424-083    P    FCI CUMBERLAND
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A- INMATE REQUEST**

I Am Please Requesting Issuance And Application Of Federal Time Credits Pursuant To USCS 18 3631/3632 For Work As An A GED/Literacy/Parenting Inmate Tutor Pursuant To CFR 544.83 And BOP PS 5300.20. The Period For Which FTC Should Be Issued Is From 12/21/18 To 11/30/21 For 220 Hours of Work Per Month For A Total Of 17 months Of Time Credit. The Hours Requested Are As Contained By Education Specialist (Calculation Attached). These Credits Must Be Issued By 1/15/22 (See Attached Brief)

12/3/21
DATE                                    SIGNATURE OF REQUESTER

**Part B- RESPONSE**

RECEIVED

DEC 07 2021

WARDEN'S OFFICE

_____    _____
DATE                               WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE           CASE NUMBER: 1103249-F1

                                          CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____    _____
DATE                                RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN                      Previous editions not usable                  BP-229(13)
                                                            APRIL 1982

18

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: POTARAZU, SREEDHAR V | 90424-083 | P | FCI CUMBERLAND
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

**Part A - REASON FOR APPEAL**

THE WARDEN'S RESPONSE TO THE BP-9 WAS INCOMPLETE.
I AM PLEASE REQUESTING ISSUANCE AND APPLICATION OF
FEDERAL TIME CREDITS PURSUANT TO USCS 18 3632/3635/3624(g)
FOR WORK PERFORMED THAT WAS ASSIGNED AS A GED/LITERACY
AND PARENTING INMATE TUTOR (PURSUANT TO CFR 544.83) AND BOP PS
5300.18. THE PERIOD FOR WHICH FTC SHOULD BE ISSUED IS
2/21/18 TO 11/30/21 FOR 220 HOURS OF WORK PER MONTH
AS CONFIRMED BY EDUCATION SPECIALIST IN OFFICIAL RECORD TO UNIT
EAM BY EDUCATION SPECIALIST THE FTC CREDIT FOR THE PERIOD
(CALCULATION BRIEF ATTACHED). THERE
IS A TOTAL OF 17 MONTHS (CALCULATION/ BY LAW BY 1/18/22.
CREDITS MUST BE ISSUED

12/17/21 | (S. Patary
DATE | SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____ | _____
DATE | REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE | CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT: _____

_____ | _____
DATE | SIGNATURE, RECIPIENT OF REGIONAL APPEAL

19

BP-230(13)

ADMINISTRATIVE REMEDY AT REGIONAL LEVEL BP-10

DECEMBER 17, 2021
STATUTES REFERENCED: 18 USCS 3621(h), 3624(g), 3632(d), CFR 544.83
OTHER REFERENCES: INSPECTOR GENERAL REPORT 11/15/21 , MEMO TO AG GARLAND FROM SEN DURBIN/GRASSLEY

THE WARDEN'S RESPONSE TO THE BP-9 WAS INCOMPLETE AND DID NOT ADDRESS THE ISSUANCE AND APPLICATION OF EARNED TIME CREDITS OF 17 MONTHS DUE FOR THE WORK PERFORMED AS A GED INMATE TUTOR( CFR 544.83 AND 18 USCS, 3632, 3635) FROM DECEMBER 21, 2018 TO NOVEMBER 30, 2021 AS CONFIRMED IN WRITING BY EDUCATION STAFF. THESE CREDITS ARE DUE BU JANUARY 15, 2022.

Pursuant to the statutes governed under the First Step Act, I am hereby requesting issuance and application of Federal Time Credits earned for the period December 21, 2018 to November 30, 2021. I have served as an Inmate Tutor for GED pursuant to CFR 544.83 since May 2018 upon completion of inmate tutor training under Mr. Randy Clarke- Camp Education Specialist at that time. The date of enactment of the First Step Act was December 21, 2018. As clarified in a memo to the Attorney General by Chairs of the Senate Judiciary Committee, Senator Durbin and Grassley in May 2021, the intent of the First Step Act was for inmates to be eligible to receive time credits from the date of enactment of the law.( memo attached). The time credit calculation therefore begins on the date of enactment as the authors of the law intended.

CALCULATION OF FTC
As mandated by the FSA ,I completed at least 2 PATTERN RISK ASSESSMENTS , have remained a MINIMUM, and am therefore eligible for 15 days of time credit for every 30 days of programming. The BOP published the proposed regulation on November 25, 2020 that indicates that " one day" of programming is equivalent to 8 hours. This conversion was challenged in the memo by Senators Durbin and Grassley. Nevertheless the assumption used in this computation is 8 hours for one day. The Education Department at Cumberland has verified( attached) that I work 160 hours per month as a GED tutor in addition to 60 hours/ month teaching Basic Literacy and Parenting for a total of 220 hours per month. These hours were officially confirmed by the Education Specialist( attached progress report to Unit Team). For this specified period( 12/18 to 11/21) it equates to approximately 36 months of programming. 220 hours/ 8 hrs per day =27.5 days/month. 27.5 days x 36 months=990 days . 990/30 days per month=33 months. 33/2( 15 days for every 30)= 16.5 months FTC. I have earned, in addition, 1 month for RDAP = 17.5 months of FTC as of 11/30/21. The response from the Warden only acknowledged 30 days of Credit but failed to address why I have not been issued earned time credits for time served as a GED Inmate Tutor.

PRODUCTIVE ACTIVITY
18 USCS 3635 defines "productive activity" as any activity that allows inmates with minimum or low recidivism to remain productive and may include delivering programs to other inmates such as literacy, reading. The Inmate Tutor is therefore codified in the law and regulations and qualifies for earned time credit.( see regs) Moreover ,inmates enrolled in GED receive Federal Time Credit as an approved FSA program. I have been responsible for more than 20 inmates receiving their GED at FPC Cumberland and have tutored hundreds. If the inmate in the class receives credit for attending  than so  must the inmate teaching them .

WORK ASSIGNMENT
I was assigned the Inmate Tutor job in May 2018 and was required to complete training before teaching. Each inmate is required to engage in a work assignment. The memo of the Senate Judiciary Committee confirms that the intent of the law is to ensure inmates that participate in any activity ,whether it is assigned or not, should receive credit. Importantly, since an "effective  risk assessment " was not developed per the FSA, any recommendations are incomplete.

ISSUANCE AND APPLICATION OF TIME CREDITS
The deadline for the issuance and application of Federal Time Credits is January 15, 2022 according to the BOP. The DOJ Inspector General's Report 11/15/21 stated that the BOP should have started issuing credits as early as January 2020 and that there was no provision in the law that allowed for delay of issuance of credits for all inmates( attached)

COMPUTATION  OF PRE-RELEASE AND  RELEASE DATE
With the 17.5 months of FTC accrued thus far, up to 12 months can be applied towards Supervised Release and the remainder towards pre-release custody. My current release date is 12/22/24. With the application of 12 months of time credits towards supervised release the adjusted release date will be 12/22/23. There is a balance of 5 months of time credits to be applied towards pre-release custody in addition to 6- 12 months of RRC/HC placement pursuant to 18 USCS 3624(c). Assuming 9 months of RRC/HC credit towards RRC/ home confinement( 3624 c) and an additional 5 months of FTC to be earned from November 2021 thru October 2022 I would be eligible to be transferred to pre-release custody by July 2022  if not sooner.

Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

From: POTARAZU, SAEEDUR ✓    90424-083    P    FCI CUMBERLAND
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST**

I Am Please Requesting Issuance And Application
Of Federal Time Credits Pursuant To USCs 18 3632/363
For Work As An A GED/Literacy/Parenting Inmate Tutor
Pursuant To CFR 544.83 And BOP PS 5300.20. The Period
For Which FTC Should Be Issued Is From 12/21/18 To
1/30/21 For 220 Hours of Work Per Month For A Total of
7 Months of Time Credit. The Hours Requested Are As
Obtained By Education Specialest (Calculation Attached). These Credits
Must Be Issued By 1/15/22 (See Attached Based
12/3/21
DATE                              SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED

DEC 07 2021

WARDEN'S OFFICE

_____        _____
DATE                              WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE        CASE NUMBER: 1103249-F1

                                   CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____        _____
DATE                              RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN                  Previous editions not usable        BP-229(13)
                                                              APRIL 1982
                                                              21

FEDERAL CORRECTIONAL ...
PART B: RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #1103249-F1

This is in response to your Request for Administrative Remedy in which you request issuance of Federal Time Credits for work as a GED/Literacy/Parenting inmate tutor for the time period of December 21, 2018, to November 30, 2021, for a total of 17 months of time credit.

Our review into the matter indicates that as of November 27, 2021, you have earned 34.0625 Federal Time Credit (days), which equals 30 Credits earned.   Updated reports are generated by the Central Office on a monthly basis.

Based on the foregoing, this response is being provided for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, Bureau of Prisons, Mid-Atlantic Region, 302 Sentinel Drive, Suite 200, Annapolis Junction, Maryland 20701. Your appeal must be received in the Mid-Atlantic Regional Office within 20 days of this response.

15 DEC 21
_____
Date

_____
H. Allen Beard, Jr., Warden

22

CUM 1330.17
12/31/2012
ATTACHMENT A

**FEDERAL CORRECTIONAL INSTIUTION, CUMBERLAND, MARYLAND**
**ATTEMPT AT INFORMAL RESOLUTION – GENERAL POPULATION**

Name: _Puturazu, Sreedhar_   Register No.: _90424-083_   Unit: _P_

Counselor: _W. Cutter (for P.Unit)_   Date: _12/02/21_

**Part A – Inmate Request/Issue:** I Am Please Requesting Issuance And Application of Federal Time Credits Pursuant To USCO §§ 3632/3636 For Work As GED / Literacy And Parenting Tutor. Credits To Be Issued From Date of Enactment 12/21/18 In the Amount of 220 HRS / Month or 17 Months of FTC Thru 11/30/21 Pursuant To IG Report 11/18/21

**Part B - Referred to:**

| Programs | | | | | |
|---|---|---|---|---|---|
| Case Mgt. Coordinator | O | Unit Manager | O | **UNICOR** | |
| Inmate Systems Mgr. | O | Case Manager A or B | Ø | Factory Manager | O |
| | | Counselor A or B | O | | |
| Captain | O | Unit Secretary | O | **Administrative** | |
| SIS Lieutenant | O | | | Exec Asst/Camp Administrator | O |
| SHU Lieutenant | O | Unit: _____ | | Human Resource Mgr. | O |
| Discipline Hearing Officer | O | | | | |
| | | **Operations** | | **Other** | |
| Chief Psychologist | O | Controller | O | _____ | O |
| FCI RDAP | O | Trust Fund Supervisor | O | _____ | O |
| FPC RDAP | O | | | _____ | O |
| | | Computer Services Mgr. | O | | |
| Chaplain | O | Food Svc. Administrator | O | | |
| Supervisor of Education | O | Health Svc Administrator | O | | |
| Supervisor of Recreation | O | Safety Manager | O | | |

**Part C – Informal Resolution Attempt**

O   Issue Resolved/Relief Granted
O   Issue Unresolved/No Relief Granted
O   Unable to address issue/Referred to

Comments: The institution has not recieved guidance on how to track, calculate or apply federal time credits

By: _____   Date: _12-2-21_

Unit Manager's Review: _____   Date: _____

| Counselor's Tracking | | | | | |
|---|---|---|---|---|---|
| Tracking # | Event Date | +20 days | Form Issued | BP-9 Issued | BP-9 Returned |
| G-75 | 12/02/21 | 12/22/21 | 12/03/21 | 12/03/21 | |

23



| Individualized Needs Plan - Program Review   (Inmate Copy) | SEQUENCE: 02070669 |
|---|---|
| Dept. of Justice / Federal Bureau of Prisons | Team Date: 12-16-2020 |
| Plan is for inmate: POTARAZU, SREEDHAR  90424-083 | |

**Most Recent Payment Plan**

**FRP Assignment:     PART     FINANC RESP-PARTICIPATES     Start: 09-06-2017**

| Inmate Decision:   **AGREED**     **$150.00** | Frequency: **MONTHLY** |
|---|---|
| Payments past 6 months:     **$900.00** | Obligation Balance: **$57,896,277.77** |

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status | |
|---|---|---|---|---|---|---|
| 1 | ASSMT | $200.00 | $0.00 | IMMEDIATE | COMPLETEDZ | |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | | |
| 2 | REST FV | $57,900,173.22 | $57,896,277.77 | IMMEDIATE | AGREED | |

| | Adjustments: | Date Added | Faci | Adjust Type | Reason | Amount |
|---|---|---|---|---|---|---|
| | | 12-10-2020 | CUM | PAYMENT | INSIDE PMT | $150.00 |
| | | 11-11-2020 | CUM | PAYMENT | INSIDE PMT | $150.00 |
| | | 10-14-2020 | CUM | PAYMENT | INSIDE PMT | $150.00 |
| | | 09-10-2020 | CUM | PAYMENT | INSIDE PMT | $150.00 |
| | | 08-12-2020 | CUM | PAYMENT | INSIDE PMT | $150.00 |
| | | 07-10-2020 | CUM | PAYMENT | INSIDE PMT | $150.00 |

**Payment Details**

Trust Fund Deposits - Past 6 months:   $4,668.12                    Payments commensurate ?   N/A

New Payment Plan:   | ** No data ** |

**Progress since last review**

Inmate Potarazu arrived at FPC Cumberland on 08-21-2017. He has maintained clear conduct while at FPC Cumberland.

**Next Program Review Goals**

Due to COVID-19 pandemic, programing is limited at this time.  You should continue to read books, work your education packets, etc., for self development. Continue to tutor and teach classes for education through 2021. Save $300 towards release funds by June 2021. Stay in contact with friends and family.

**Long Term Goals**

You should practice staying safe by washing your hands often with warm water and soap for at least 20 seconds. Especially if you've blown your nose, are coughing or sneezing. Hand washing is the most effective way to remove the virus from skin.  Avoid touching your face and cover your cough and sneezes with a tissue or the inside of your elbow   DO NOT use your hands! Maintain at least a 6 feet distance between yourself and others and wear your mask daily. Seek out psychology services, as needed. Maintain clear conduct and good sanitation until released from custody on 12-22-2025. Save $4,415 for release funds by 09-2025. Complete RPP by 09-2025. Make scheduled payments towards the Restitution obligation and complete while on supervised release.

**RRC/HC Placement**

No.
null.
Consideration has been given for Five Factor Review (Second Chance Act):
- Facility Resources
- Offense
- Prisoner
- Court Statement
- Sentencing Commission

**Comments**

Maryland D/L expired on 05-09-2019.
Is there documentation in the PSR of any of the following?
__ Any history of Bankruptcy
__ No bank account
__ No assets nor liabilities noted in PSR
_X_ Debts noted in Credit Report or other sources
__ Tax Liabilities/back taxes
__ Unpaid alimony/child support
__ other indications of lack of financial management skills (specify)


YES ___X___ NO _____ (if any of the above, check yes)
If the answer is yes, the inmate has a financial/poverty skills need.

24

The case law on this issue is mixed, but some courts have concluded that this reading is in fact the better one. With regard to participation in programming completed after the date of the FSA's enactment, but before completion of all inmate risk and needs assessments on January 15, 2020, some courts have held that eligible inmates should be awarded FSA Time Credits in addition to the pre-FSA incentives already offered by the Bureau. Courts in the Districts of New Jersey and Oregon have directed the Bureau to award Time Credits under the FSA for the successful completion of programs and activities occurring before January 15, 2020, but on or after December 21, 2018, the FSA's date of enactment. *See, e.g., Cazares* v. *Hendrix,* 20–cv–2019 (D. Or. Nov. 9, 2021); *Goodman* v. *Ortiz,* 2020 WL 5015613, at \*6 (D.N.J., Aug. 25, 2020) (holding inmates are currently entitled to FSA Time Credits that have been properly earned); *Hare* v. *Ortiz,* 2021 WL 391280, at \*7 (D.N.J. Feb. 4, 2021) (limiting award of Time Credits to those earned for programs completed on or after the date of enactment of the FSA); *Gallo* v. *Ortiz,* Civ. No. 20–16416 (D.N.J., filed Feb. 16, 2021) (District Court required the Bureau to calculate Time Credits based on 2018 date).[3] Awarding Time Credits as of the date of enactment may also be more consistent with the FSA's goals of reducing recidivism through participation in programming and activities, and allowing inmates to work towards early release. From a fairness perspective, the Bureau also acknowledges that an inmate who has been consistently participating in programming, such as working to obtain his or her GED while the FSA was in effect, between December 21, 2018 (the date of the

⟶

[3] Most courts that have analyzed this issue, however, have found it reasonable for the Bureau to begin awarding Time Credits for successful completion on or after January 15, 2020, as opposed to holding that inmates are entitled to FSA Time Credits for successful completion of EBRR Programs and PAs occurring before that date but on or after December 21, 2018. *See, e.g., Cohen* v. *United States,* No. 20–cv–10833, 2021 WL 1549917, at \*6 (S.D.N.Y. Apr. 20, 2021) ("[T]he statute does not require the BOP to begin awarding ETCs [earned time credits] during the phase-in period."); *Kennedy-Robey* v. *Warden, FCI Pekin,* No. 20–cv–1371 (C.D. Ill. Mar. 2, 2021) (ECF No. 14) ("Not only is the BOP's decision to delay awarding credits permitted under the statute, the BOP has legitimate reasons for desiring to do so."); *Llewlyn* v. *Johns,* No. 5:20-cv-77, 2021 WL 535863 (S.D. Ga. Jan. 5, 2021); *Herring* v. *Joseph,* No. 4:20–CV–249, 2020 WL 3642706, at \*1 (N.D. Fla. July 6, 2020); *Holt* v. *Warden,* 4:20–CV–04064–RAL, (D.S.D. May. 13, 2021; *Fleming* v. *Joseph,* No. 3:20CV5.990–LC–HTC, 2021 WL 1669361 (N.D. Fla. Apr. 7, 2021) (report and recommendation). *See also Bowling* v. *Hudgins,* 2020 WL 1917490 (N.D. Va. Apr. 20, 2020); *Allen* v. *Hendrix,* 2020 WL 890396 (E.D. Ark. Feb. 24, 2020).

enactment of the FSA), and January 15, 2020 (the date risk and needs assessments were completed on all Bureau inmates), should be rewarded for that effort.

While the Bureau continues to consider the FSA amenable to the interpretation reflected in the proposed rule, it acknowledges that the statute is ambiguous, and in light of the FSA's purposes and fairness considerations, it exercises its discretion to adopt the reading urged by the majority of commenters. Therefore, the Bureau amends this final rule to allow inmates eligible under the First Step Act to receive retroactive Time Credits for programming and activities they participated in starting on December 21, 2018, the date of the FSA's enactment. In determining how to award FSA Time Credits during the period before all individualized risk and needs assessments had been completed, the Bureau faces administrative challenges. Consistent with the phased-in approach contemplated by the FSA, the Bureau did not have mechanisms in place to methodically track participation in EBRRs and PAs until January 15, 2020, because comprehensive uniform tracking codes did not exist. In addition, it was not until that date that the Bureau had completed individualized risk and needs assessments for every inmate— and thus had a basis to conclude that there was an evidence-based reason to assign a particular program to, or recommend particular activities for, an inmate in order to reduce a particular inmate's risk of recidivism. Thus, in many instances, inmates were participating in programs for reasons other than addressing a criminogenic need.

Due to these administrative difficulties, for inmates participating in programming after the date of the FSA's enactment, but before the date that Bureau had completed all risk and needs assessments (December 18, 2018, to January 14, 2020), it is not feasible for the Bureau to connect individual inmate participation in programming to individualized risk and needs assessments, since the risk and needs assessment tool did not exist until well after the date of the FSA's enactment. Instead, for inmate participation in programming during this period of time, the Bureau will exercise its discretion to award FSA Time Credits to inmates otherwise deemed eligible under the First Step Act by applying the same criteria as that applied to inmate participation in authorized EBRR programs or PAs recommended based on a risk and needs assessment after January 2020 to determine the inmate's

retroactive Time Credit balance. Eligible inmates will be afforded a presumption of participation for the period between December 21, 2018, and January 14, ⟵ 2020 and be awarded Time Credits accordingly. Inmates will not receive credit for any period in which they were in a special housing unit, in a designation status outside the institution, temporarily transferred to the custody of another Federal or non-Federal government agency, in mental health/psychiatric holds (either court-ordered mental health/psychiatric evaluations or situations in which mental health or psychiatric evaluation or treatment require an inmate to be designated outside or away from the inmate's "home" facility within the Bureau), or for refusing mandatory programming, as further explained below.

*COMMENT: There are no safeguards in the risk and needs assessment system to prevent racial discrimination or racial disparities.*

Several commenters were concerned about the potential for racial and ethnic biases or disparities in the risk and needs assessment tool used by the Bureau of Prisons.

*RESPONSE:* The Department of Justice issued the Risk and Needs Assessment System (RNAS) mandated by the First Step Act, known as PATTERN, on July 19, 2019. *See The First Step Act of 2018: Risk and Needs Assessment,* U.S. DEP'T OF JUSTICE: OFFICE OF THE ATTORNEY GENERAL, *https://www.bop.gov/ inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf* (July 2019). The Department's release of PATTERN was followed by a comment period during which the Department received approximately 200 comments and statements and held two listening sessions. On November 19, 2019, the Attorney General met with the Independent Review Committee (IRC) created by Section 107 of the FSA to discuss proposed changes to PATTERN, as required by 18 U.S.C. 3632.

The Attorney General then announced enhancements to PATTERN in a document entitled *The First Step Act of 2018: Risk and Needs Assessment System—UPDATE, https:// www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf* (January 2020) (2020 Update). In this 2020 Update, and in response to concerns arising from potential racial disparities, the Department instituted several recommended changes to the tool. Later, in 2021, the Department also implemented a more standardized

The case law on this issue is mixed, but some courts have concluded that this reading is in fact the better one. With regard to participation in programming completed after the date of the FSA's enactment, but before completion of all inmate risk and needs assessments on January 15, 2020, some courts have held that eligible inmates should be awarded FSA Time Credits in addition to the pre-FSA incentives already offered by the Bureau. Courts in the Districts of New Jersey and Oregon have directed the Bureau to award Time Credits under the FSA for the successful completion of programs and activities occurring before January 15, 2020, but on or after December 21, 2018, the FSA's date of enactment. *See, e.g., Cazares v. Hendrix,* 20–cv–2019 (D. Or. Nov. 9, 2021); *Goodman v. Ortiz,* 2020 WL 5015613, at *6 (D.N.J., Aug. 25, 2020) (holding inmates are currently entitled to FSA Time Credits that have been properly earned); *Hare v. Ortiz,* 2021 WL 391280, at *7 (D.N.J. Feb. 4, 2021) (limiting award of Time Credits to those earned for programs completed on or after the date of enactment of the FSA); *Gallo v. Ortiz,* Civ. No. 20–16416 (D.N.J., filed Feb. 16, 2021) (District Court required the Bureau to calculate Time Credits based on 2018 date).[3] Awarding Time Credits as of the date of enactment may also be more consistent with the FSA's goals of reducing recidivism through participation in programming and activities, and allowing inmates to work towards early release. From a fairness perspective, the Bureau also acknowledges that an inmate who has been consistently

→ participating in programming, such as working to obtain his or her GED while the FSA was in effect, between December 21, 2018 (the date of the

enactment of the FSA), and January 15, 2020 (the date risk and needs assessments were completed on all Bureau inmates), should be rewarded for that effort.

While the Bureau continues to consider the FSA amenable to the interpretation reflected in the proposed rule, it acknowledges that the statute is ambiguous, and in light of the FSA's purposes and fairness considerations, it exercises its discretion to adopt the reading urged by the majority of commenters. Therefore, the Bureau amends this final rule to allow inmates eligible under the First Step Act to receive retroactive Time Credits for programming and activities they participated in starting on December 21, 2018, the date of the FSA's enactment. In determining how to award FSA Time Credits during the period before all individualized risk and needs assessments had been completed, the Bureau faces administrative challenges. Consistent with the phased-in approach contemplated by the FSA, the Bureau did not have mechanisms in place to methodically track participation in EBRRs and PAs until January 15, 2020, because comprehensive uniform tracking codes did not exist. In addition, it was not until that date that the Bureau had completed individualized risk and needs assessments for every inmate— and thus had a basis to conclude that there was an evidence-based reason to assign a particular program to, or recommend particular activities for, an inmate in order to reduce a particular inmate's risk of recidivism. Thus, in many instances, inmates were participating in programs for reasons other than addressing a criminogenic need.

Due to these administrative difficulties, for inmates participating in programming after the date of the FSA's enactment, but before the date that Bureau had completed all risk and needs assessments (December 18, 2018, to January 14, 2020), it is not feasible for the Bureau to connect individual inmate participation in programming to individualized risk and needs assessments, since the risk and needs assessment tool did not exist until well after the date of the FSA's enactment. Instead, for inmate participation in programming during this period of time, the Bureau will exercise its discretion to award FSA Time Credits to inmates otherwise deemed eligible under the First Step Act by applying the same criteria as that applied to inmate participation in authorized EBRR programs or PAs recommended based on a risk and needs assessment after January 2020 to determine the inmate's

retroactive Time Credit balance. Eligible inmates will be afforded a presumption of participation for the period between December 21, 2018, and January 14,  ←— 2020 and be awarded Time Credits accordingly. Inmates will not receive credit for any period in which they were in a special housing unit, in a designation status outside the institution, temporarily transferred to the custody of another Federal or non-Federal government agency, in mental health/psychiatric holds (either court-ordered mental health/psychiatric evaluations or situations in which mental health or psychiatric evaluation or treatment require an inmate to be designated outside or away from the inmate's "home" facility within the Bureau), or for refusing mandatory programming, as further explained below.

*COMMENT: There are no safeguards in the risk and needs assessment system to prevent racial discrimination or racial disparities.*

Several commenters were concerned about the potential for racial and ethnic biases or disparities in the risk and needs assessment tool used by the Bureau of Prisons.

*RESPONSE:* The Department of Justice issued the Risk and Needs Assessment System (RNAS) mandated by the First Step Act, known as PATTERN, on July 19, 2019. *See The First Step Act of 2018: Risk and Needs Assessment,* U.S. DEP'T OF JUSTICE: OFFICE OF THE ATTORNEY GENERAL, *https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf* (July 2019). The Department's release of PATTERN was followed by a comment period during which the Department received approximately 200 comments and statements and held two listening sessions. On November 19, 2019, the Attorney General met with the Independent Review Committee (IRC) created by Section 107 of the FSA to discuss proposed changes to PATTERN, as required by 18 U.S.C. 3632.

The Attorney General then announced enhancements to PATTERN in a document entitled *The First Step Act of 2018: Risk and Needs Assessment System—UPDATE, https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf* (January 2020) (2020 Update). In this 2020 Update, and in response to concerns arising from potential racial disparities, the Department instituted several recommended changes to the tool. Later, in 2021, the Department also implemented a more standardized

---

[3] Most courts that have analyzed this issue, however, have found it reasonable for the Bureau to begin awarding Time Credits for successful completion on or after January 15, 2020, as opposed to holding that inmates are entitled to FSA Time Credits for successful completion of EBRR Programs and PAs occurring before that date but on or after December 21, 2018. *See, e.g., Cohen v. United States,* No. 20–cv–10833, 2021 WL 1549917, at *6 (S.D.N.Y. Apr. 20, 2021) ("[T]he statute does not require the BOP to begin awarding ETCs [earned time credits] during the phase-in period."); *Kennedy-Robey v. Warden, FCI Pekin,* No. 20–cv–1371 (C.D. Ill. Mar. 2, 2021) (ECF No. 14) ("Not only is the BOP's decision to delay awarding credits permitted under the statute, the BOP has legitimate reasons for desiring to do so."); *Llewlyn v. Johns,* No. 5:20-cv-77, 2021 WL 535863 (S.D. Ga. Jan. 5, 2021); *Herring v. Joseph,* No. 4:20–CV–249. 2020 WL 3542706, at *1 (N.D. Fla. July 6, 2020); *Holt v. Warden,* 4:20–CV–04064–RAL, (D.S.D. May. 13, 2021; *Fleming v. Joseph,* No. 3:20CV5.990–LC–HTC, 2021 WL I66936l (N.D. Fla. Apr. 7, 2021) (report and recommendation). *See also Bowling v. Hudgins,* 2020 WL 1917490 (N.D. Va. Apr. 20, 2020); *Allen v. Hendrix,* 2020 WL 890396 (E.D. Ark. Feb. 24, 2020).

For instance, one commenter indicated that while the requirement to successfully complete a program before earning Time Credits "may make sense for educational classes, certificate-based programs, or fixed length productive activities, it should not apply to prison jobs that would require ongoing accumulation of Time Credits. A prison job is not a 'program to complete,' has no set duration, and its success is based on continued employment and supervisor evaluations."

Another commenter suggested that those "participating in the Residential Drug[] Abuse Program (RDAP), should receive (16) program hours per day, 2 eight-hour program days for 1 proposed day. . . . [because] RDAP participants 'live' in a therapeutic community."

Additionally, Senator Sheldon Whitehouse (D–RI) and Senator John Cornyn (R–TX) commented as follows:

As BOP finalizes and implements its proposed rule, it should ensure that individuals are assigned to categories of programs that meet their needs, rather than specific programs, to allow for maximum participation in credit-earning EBRRs and PAs. . . . Each program at a facility should be appropriately categorized, including faith-based programs. Such flexibility will ensure that individuals can freely choose to participate or not participate in faith-based options. It is also critical to allow for greater program access as BOP expands its offerings, as some programs have limited capacity or may not be offered at particular facilities.

*RESPONSE:* The Bureau agrees with these commenters, and has structured its programs and work assignments to promote participation and flexibility. New funding allotments will enhance the Bureau's course offerings, largely by permitting it to increase capacity through hiring additional staff, and will also serve to bolster the Bureau's resources, thereby improving its ability to carry out the FSA Time Credits program. The Bureau began to enhance programming immediately after the FSA's enactment, using then-current appropriations from FY 2019 not allotted specifically for FSA implementation, and continued to grow its programming offerings with budget allotments as authorized from FY 2020 appropriations.

In *The Attorney General's First Step Act Section 3634 Annual Report,* U.S. DEP'T OF JUSTICE: OFFICE OF THE ATTORNEY GENERAL, *https:// www.bop.gov/inmates/fsa/docs/ 20201221_fsa_section_3634_report.pdf* (December 2020) (2020 Annual Report), the Bureau established a review process to consider externally submitted programs for potential inclusion on the approved EBRR Program/PA list. *Id.* at

17. The Bureau currently engages in partnerships with external organizations to recruit community volunteers to assist with inmate reentry and educational programs. Consistent with the goal of supporting and expanding volunteer activities at all institutions, on June 25, 2019, the Bureau provided guidance to all Wardens about the importance and use of partnerships under the FSA. Specifically, the Assistant Directors for the Office of General Counsel and Reentry Services Divisions issued guidance on collaboration with outside organizations pursuant to the FSA. This memorandum provided information on the FSA's statutory requirements, the Bureau process for establishing partnerships, equitable treatment of similar organizations, and tracking of partnerships.

On September 19, 2019, voluntary partnerships were in place at all 122 Bureau institutions. During FY 2019, 5,939 individuals volunteered 110,489 hours at various institutions. During FY 2020 (as of September 10, 2020), 5,978 volunteers and contractors had provided 157,752 hours at various institutions. The increase in volunteer hours can, in part, be attributed to staff efforts to increase partnerships pre-COVID–19, and changes made to the Bureau volunteer tracking system. *Id.* at 37.

In 2020, the Bureau created unique identifier codes for every Bureau program. These codes allow Bureau to track inmates' program enrollment, participation, and completion. This information can then be compared to needs assessment information and used as a method for assessing capacity. Unfortunately, because of the global pandemic, the Bureau has not been able to program as it would under normal conditions.

The Bureau assesses 12 broad need areas plus dyslexia, and programs are matched to each of these needs. As normal operations resume, the Bureau will be able to accurately track whether inmates sign up for the programs that match their needs, and whether the programs are offered with enough capacity that inmates are able to complete them at the appropriate times during their sentences. While the Bureau's current list of over 70 EBRR Programs and PAs addresses most areas of need, some improvements have been made even during the pandemic. For example, the Bureau created better quality and more standardized materials that provide more consistent program delivery. Additionally, a more intensive program addressing criminal cognition is in development to account for this

highly prevalent need in Bureau facilities. *Id.* at 19–20.

Also, several programs and activities mentioned by the commenters as items that should be included in the list of approved programs are, in fact, already on the list. *The First Step Act Approved Programs Guide,* available on the Bureau's website at *https:// www.bop.gov/inmates/fsa/docs/2021_ fsa_program_guide.pdf* (Programs Guide), contains a program description, institution locations, needs addressed by each program offered, and the department responsible for program delivery (*e.g.,* Education, Psychology).

The Programs Guide indicates that offered programs and activities "will vary based on the needs of the sentenced population" at a given location. This helps to explain, in part, why some programs and activities may not be available at all facilities. However, as the Bureau continues to expand its offerings, the Programs Guide continues to expand, and will will be updated annually.

With regard to several programs and activities specifically mentioned by commenters:

*UNICOR:* Employment in Federal Prison Industries (FPI, also known by its trade name, UNICOR) is included in the Programs Guide as an EBRR Program.

*RDAP:* The Residential Drug Abuse Treatment Program (RDAP), is included in the Program Guide as an EBRR Program.

*Online or correspondence college courses:* The Programs Guide includes Post-Secondary Education programming, and explains that "[c]ollege level classes are provided by credentialed instructors from the community who deliver coursework leading to the Associates or Bachelors degree," and that "[s]pecific prerequisites for each program are determined by the school providing the service." *See Programs Guide* at 23. This program, delivered by Education staff or appropriately credentialed contractors, allows for online or correspondence college courses, as authorized and credentialed by the Bureau's Education staff.

*Religious services and programming:* The Programs Guide describes several faith-based programs and activities currently available at all Bureau facilities, including the Threshold Program, a faith-based reentry program (*id.* at 32), and Embracing Interfaith Cooperation, a PA which fosters interfaith dialogue and understanding to counter religious discrimination and extremism (*id.* at 36).

Also, the Bureau's longstanding Life Connections Program (LCP), a

POTARAZU SREEDHAR 9042'('83

37

residential, multi-faith-based reentry program open to inmates of all religious traditions and those with no faith affiliation, uses contract partners to provide religious services, while community volunteers serve as mentors to inmate participants. This program is available at six Bureau facilities. *See* 2020 Annual Report, *supra*, at 37–38.

As the Bureau's FSA implementation budget appropriations increase and necessary COVID–19 pandemic-related health and safety restrictions ease, the Bureau will continue its efforts to expand EBRR programming and PA offerings available at Bureau facilities for eligible inmates. Furthermore, as noted above, the Bureau has changed the proposed regulation to a more inclusive model, whereby FSA Time Credits may be earned if an eligible inmate is successfully participating in EBRR Programs and PAs recommended based upon his or her risk and needs assessment. Also, inmates will not be penalized if specifically recommended EBRR Programs or PAs are unavailable to them or at full enrollment at their facilities. As the Bureau continues to evaluate these and other types of programs and activities, the list of EBRR Programs and PAs for which inmates may earn FSA Time Credits will likewise increase.

*COMMENT: FSA Time Credits should be earned for successful participation, not only for successful completion.*

Many commenters opined that FSA Time Credits should be awarded on an ongoing basis, during *participation* in EBRR programming and PAs, instead of after successful *completion* of an EBRR Program or PA. One commenter wrote that

[b]y focusing only on completion, BOP diminishes the value of participation and weakens the incentive structure Congress enacted. Indeed, there are myriad situations where people would successfully participate in an approved program and—through no fault of their own—be prevented from, or delayed in, completing it. Transfers, program resource and staffing limitations, and facility movement restrictions all impact program completion, as do length of sentence, program availability, and waitlists. Individuals have no control over completion if, for example, their facility is locked down, or if programs are indefinitely suspended due to a pandemic. Congress created the earned time credit system to encourage personal responsibility. BOP's all-or-nothing rule that fails to acknowledge participation is inconsistent with this intent. BOP should revise the proposed rule to allow individuals who successfully participate in programming to earn time credits.

*RESPONSE:* The Bureau agrees with these comments. As indicated previously, the Bureau is altering and

expanding its method for awarding Time Credits.

The concern of the commenters regarding participation in programming echoes the Bureau's longstanding policy of encouraging inmate reentry programming and productive activities throughout each inmate's incarceration, which is consistent with the FSA's goal of attaining maximum recidivism reduction. The Bureau will continue to emphasize the need for full and successful participation in EBRR programs and PAs, as recommended for each inmate, to achieve the maximum award of FSA Time Credits to the maximum number of eligible inmates.

Toward that end, the Bureau has developed the simpler model which it now adopts for the FSA Time Credits program. Under this model, each eligible inmate earns Time Credits while participating in recommended EBRR Programs and PAs. Time Credits for successful participation are awarded at the end of each thirty-day period. By altering the scheme for awarding Time Credits in this manner, the Bureau hopes to increase the amount of FSA Time Credits that may be awarded to the maximum number of eligible inmates. Inmates must participate in all programs and activities that the Bureau recommends based on an individualized risk and needs assessment to be considered to have successfully participated in recommended EBRR Programs and PAs for purposes of earning Time Credits.

It is important to note, however, that temporary interruptions in participation that are unrelated to an inmate's refusal or other violation of programming requirements, such as the unavailability of a recommended program or activity or its full enrollment, or interruptions authorized by the Bureau, will not affect the inmate's ability to earn Time Credits. An inmate's ability to earn FSA Time Credits will be affected if the inmate refuses to participate in the recommended programming or productive activity, engages in misconduct that results in removal from the program or activity through placement in restrictive housing, or disrupts or fails to follow the conditions, parameters, or rules of the activity. In the event that the inmate is found to have committed any of these violations, accrual of Time Credits is paused until the inmate complies with programming conditions, parameters, or rules, or completes the disciplinary sanction.

For example, the Bureau may permit an inmate to continue earning FSA Time Credit if programming is briefly interrupted due to an instructor's

illness, which results in the instructor canceling class for the day. Another possible example might be a brief interruption caused by an inmate requiring to be absent from programming for a day or two due to illness or medical treatment. In such circumstances, the Bureau may review whether or not the illness or medical treatment is attributable to factors over which the inmate may exercise control (possible drug overdose, injuries sustained while fighting, etc.), whether the conduct is a disciplinary offense, or whether it is excusable behavior and therefore may be authorized. The Bureau will strive to reach an equitable result when calculating time in program participation and circumstances both beyond and within the inmate's control.

Accordingly, unless the inmate formally declines recommended programming addressing his or her unique needs, or is not participating in any activities, the assumption is that the eligible inmates will be earning Time Credits and fully participating in recommended programming. The regulation indicates that accrual of Time Credits may be suspended in certain situations when the inmate is unable to participate in recommended programming, including, but not limited to, situations such as:

• Placement in a Special Housing Unit;

• Designation status outside the institution (*e.g.*, for extended medical placement in a hospital or outside institution, court appearances, an escorted trip, a furlough, etc.);

• Temporary transfer to the custody of another federal or non-federal government agency (e.g., on state or federal writ, transfer to state custody for service of sentence, etc.);

• Placement in mental health/psychiatric holds; or

• "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

Inmates who decline to participate in a recommended voluntary EBRR or PA (*i.e.*, inmates that "opt out") will not be considered to be refusing a program assignment for the purposes of disciplinary prohibited act code violations, but will merely be excluded from benefits or privileges of FSA Time Credit Program participation. For example, declining to take a recommended anger management course will prevent an inmate from earning FSA Time Credits, but will not in itself constitute a disciplinary prohibited act code violation. Inmates that refuse a formal assignment,

POTARAZU SREEDHAR 90424010

CUM 1330.17
12/31/2012
ATTACHMENT A

**FEDERAL CORRECTIONAL INSTIUTION, CUMBERLAND, MARYLAND**
**ATTEMPT AT INFORMAL RESOLUTION – GENERAL POPULATION**

Name: _Polurazu, Sreedhav_    Register No.: _90424-083_    Unit: _P_

Counselor: _W. Cutter (for P. Unit)_      Date: _12/02/21_

**Part A – Inmate Request/Issue:** _I Am Please Requesting Issuance And Application Of Federal Time Credits Pursuant to USCS § 3632/3635 For Work As GED / Literacy And Parenting Tutor. Credits To Be Issued From Date Of Enactment 12/21/18 In The Amount Of 220 Hrs / Month Or 17 months of FTC Thru 11/30/21 Pursuant to IG Report 11/18/21_

**Part B - Referred to:**

| Programs | | | UNICOR | |
|---|---|---|---|---|
| Case Mgt. Coordinator | O | Unit Manager | O | Factory Manager | O |
| Inmate Systems Mgr. | O | Case Manager A or B | Ø | | |
| | | Counselor A or B | O | **Administrative** | |
| Captain | O | Unit Secretary | O | Exec Asst/Camp Administrator | O |
| SIS Lieutenant | O | | | Human Resource Mgr. | O |
| SHU Lieutenant | O | Unit: _____ | | | |
| Discipline Hearing Officer | O | | | **Other** | |
| | | **Operations** | | _____ | O |
| Chief Psychologist | O | Controller | O | _____ | O |
| FCI RDAP | O | Trust Fund Supervisor | O | _____ | O |
| FPC RDAP | O | | | | |
| | | Computer Services Mgr. | O | | |
| Chaplain | O | Food Svc. Administrator | O | | |
| Supervisor of Education | O | Health Svc Administrator | O | | |
| Supervisor of Recreation | O | Safety Manager | O | | |

**Part C – Informal Resolution Attempt**

O   Issue Resolved/Relief Granted
O   Issue Unresolved/No Relief Granted
O   Unable to address issue/Referred to

Comments: _The Institution have not guidance on how to track calculate or apply Federal Time Credits!_

By: _[signature]_      Date: _12-2-21_

Unit Manager's Review: _____    Date: _____

| Counselor's Tracking | | | | | |
|---|---|---|---|---|---|
| Tracking # | Event Date | +20 days | Form Issued | BP-9 Issued | BP-9 Returned |
| G-95 | 12/02/21 | 12/22/21 | | | |

29

DECEMBER 3, 2021
STATUTES REFERENCED: 18 USCS 3621(h), 3624(g), 3632(d), CFR 544.83
OTHER REFERENCES: INSPECTOR GENERAL REPORT 11/15/21 , MEMO TO AG GARLAND FROM SEN DURBIN/GRASSLEY

Pursuant to the statutes governed under the First Step Act, I am hereby requesting issuance and application of Federal Time Credits earned for the period December 21, 2018 to November 30, 2021. I have served as an Inmate Tutor for GED pursuant to CFR 544.83 since May 2018 upon completion of inmate tutor training under Mr. Randy Clarke- Camp Education Specialist at that time. The date of enactment of the First Step Act was December 21, 2018. As clarified in a memo to the Attorney General by Chairs of the Senate Judiciary Committee, Senator Durbin and Grassley in May 2021, the intent of the First Step Act was for inmates to be eligible to receive time credits from the date of enactment of the law.( memo attached). The time credit calculation therefore begins on the date of enactment as the authors of the law intended.

CALCULATION OF FTC
As mandated by the FSA ,I completed at least 2 PATTERN RISK ASSESSMENTS , have remained a MINIMUM,  and  am therefore eligible for 15 days of time credit for every 30 days of programming. The BOP published the proposed regulation on November 25, 2020 that indicates that " one day" of programming is equivalent to 8 hours. This conversion was challenged in the memo by Senators Durbin and Grassley. Nevertheless the assumption used in this computation is 8 hours for one day. The Education Department at Cumberland has verified( attached) that I work 160 hours per month as a GED tutor in addition to an additional 60 hours/ month teaching Basic Literacy and Parenting for a total of 220 hours per month. For a period of 36 months( 12/18 to 11/21) this equates to approximately 36 months of programming. 220 hours/ 8 hrs per day =27.5 days/month. 27.5 days x 36 months=990 days . 990/30 days per month=33 months. 33/2( 15 days for every 30)= 16.5 months FTC. I have earned, in addition, 1 month for RDAP = 17.5 months of FTC as of 11/30/21.

PRODUCTIVE ACTIVITY
18 USCS 3635 defines "productive activity" as any activity that allows inmates with minimum or low recidivism to remain productive and may include delivering programs to other inmates such as literacy, reading. The Inmate Tutor is therefore codified in the law and regulations and qualifies for earned time credit.( see regs) Moreover ,inmates enrolled in GED receive Federal Time Credit as an approved FSA program. I have been responsible for more than 20 inmates receiving their GED at FPC Cumberland and have tutored hundreds. If the inmate in the class receives credit for attending  than so  must the inmate teaching them .

WORK ASSIGNMENT
I was assigned the Inmate Tutor job in May 2018 and was required to complete training before teaching. Each inmate is required to engage in a work assignment. The memo of the Senate Judiciary Committee confirms that the intent of the law is to ensure inmates that participate in any activity ,whether it is assigned or not, should receive credit. Importantly, since an "effective  risk assessment " was not developed per the FSA, any recommendations are incomplete.

ISSUANCE AND APPLICATION OF TIME CREDITS
The deadline for the issuance and application of Federal Time Credits is January 15, 2022 according to the BOP. The DOJ Inspector General's Report 11/15/21 stated that the BOP should have started issuing credits as early as January 2020 and that there was no provision in the law that allowed for delay of issuance of credits for all inmates( attached)

COMPUTATION  OF PRE-RELEASE AND  RELEASE DATE
With the 17.5 months of FTC accrued thus far, up to 12 months can be applied towards Supervised Release and the remainder towards pre-release custody. My current release date is 12/22/24. With the application of 12 months of time credits towards supervised release the adjusted release date will be 12/22/23. There is a balance of 5 months of time credits to be applied towards pre-release custody in addition to 6- 12 months of RRC/HC placement pursuant to 18 USCS 3624(c). Assuming 9 months of RRC/HC credit towards RRC/ home confinement( 3624 c) and an additional 5 months of FTC to be earned from November 2021 thru October 2022 I would be eligible to be transferred to pre-release custody by July 2022  if not sooner.

30



DEPARTMENT OF JUSTICE | OFFICE OF THE INSPECTOR GENERAL

# MANAGEMENT ADVISORY MEMORANDUM 22-007

NOVEMBER 2021

Impact of the Failure to Conduct Formal Policy Negotiations on the Federal Bureau of Prisons' Implementation of the FIRST STEP Act and Closure of Office of the Inspector General Recommendations

EVALUATION AND INSPECTIONS DIVISION

(3)

Veterans, (4) Management of Aging Offenders, (5) Secure Mental Health Units, (6) First Step Act Incentives Procedures Under the Cares Act Covered Period, and (7) Release Orientation Program.

## FSA Time Credits

The FSA provides that BOP inmates who "successfully complete [EBRR programs] or productive activities, shall earn time credits."[15] Since January 15, 2020, federal inmates have been able to earn time credits under the FSA (see the text box). However, we found that the BOP has not applied such statutorily earned time credits to any of the approximately 60,000 eligible inmates who may have completed EBRR programs or productive activities.[16] We are concerned that the delay in applying earned time credits may negatively affect inmates who have earned a reduction in their sentence or an earlier placement in the community.

**DOJ Announcement on FSA Time Credits**

On January 15, 2020, the Department announced several significant developments concerning its implementation of the FSA. In the Department's press release, then Attorney General William P. Barr declared that, "beginning today, inmates will have even greater incentive to participate in evidence-based programs that prepare them for productive lives after incarceration." Among other developments, the Department announced that, "as of [January] 15, 2020, inmates will be assigned to participate in [EBRR programs and productive activities] based on an initial needs assessment conducted by BOP. Participation and completion of those assigned programs and activities can lead to placement in pre-release custody or a 12-month sentence reduction under the [FSA]."

Source: DOJ press release announcing enhancements to the risk assessment system and FSA updates

BOP officials told the OIG that the BOP has not applied time credits to inmate sentences as directed under the law because:

(1) a rule that would codify the BOP's procedures for time credits has not been finalized, and

(2) the BOP must complete policy negotiations on its time credits policy with the national union (No. 8 in Table 1, above).

The BOP stated that the time credits policy must be negotiated with the national union because it would create changes to conditions of employment, including determinations and application of earned time credits for inmates, for Unit Team staff working in BOP institutions who are bargaining unit employees.

In December 2020, the Office of the Attorney General (OAG) released its annual report to Congress summarizing the activities and accomplishments of the Department in implementing the FSA.[17] The report acknowledged that the BOP had not applied earned time credits to inmate sentences and stated that the BOP "[did] not believe that anyone ha[d] been negatively impacted...because of the dramatic expansion of inmate community placements in 2020 pursuant to the [Coronavirus Aid, Relief, and Economic Security (CARES)] Act [of 2020]."[18]

---

[15] 18 U.S.C. § 3632(d). However, inmates are ineligible to receive time credits if they are serving a sentence for a conviction under certain provisions of law. For more information, see 18 U.S.C. § 3632(d)(4)(D).

[16] As of March 30, 2021, BOP data indicates that nearly half (60,146 out of 123,186) of all inmates in BOP custody are eligible for time credits if they have completed EBRR programs or productive activities.

[17] See OAG, *The Attorney General's First Step Act Section 3634 Annual Report* (December 2020), www.bop.gov/inmates/fsa/docs/ 20201221_fsa_section_3634_report.pdf (accessed November 10, 2021).

[18] See OAG, *First Step Act Section 3634 Annual Report,* 40. The report does not mention an August 2020 decision from the U.S. District Court for New Jersey, which ruled in favor of a federal inmate who sued the BOP for failing to apply his earned time credits after he had participated in EBRR programs. After the court-ordered application of 120 days of earned time credits, the inmate was transferred into the community for the duration of his sentence and was subsequently released from BOP custody in January 2021. See *Aryeh Goodman v. David Ortiz, in His Capacity as Warden of Federal Correctional Institution Fort Dix* (Case 1:20-cv-07582-RMB, Aug. 25, 2020), www.casetext.com/case/goodman-v-ortiz (accessed November 10, 2021). In addition, in response to a draft of this memorandum, the BOP reported that the delivery of EBRR programs and productive activities to inmates has been "severely impacted" by the pandemic. As we note above, inmates must participate in EBRR programs and productive activities to earn time credits.

finalized, will be negotiated with the national union.  The BOP reiterated that, while these policies may be awaiting finalization, they are not hampering or impeding efforts to implement FSA programs and services. For instance, the BOP stated that, with respect to time credits, the Correctional Programs Division monitors the accrual of time credits for inmates who are within 2 years of their projected release date to ensure that such time is considered for purposes of their pre-release confinement date.

**OIG Analysis**:  The BOP's representation that it continues to prioritize policies pending negotiation with the national union is responsive to this recommendation.  We note, however, that the BOP details neither how it is prioritizing policy negotiations nor how it will effectively reduce the backlog of policies requiring negotiation.  Separately, the OIG does not agree that the suspension of policy negotiations has had no material impact on the BOP's implementation of the FSA.  As we discuss in this memorandum, the BOP told us that it did not start offering incentives and rewards to inmates to encourage participation in evidence-based recidivism reduction programs until the First Step Act Program Incentives policy was published in July 2021, about 18 months after it had the statutory authority to do so.  Further, while the Correctional Services Division may be monitoring the accrual of time credits for inmates who are within 2 years of their projected release date, the BOP has not yet applied time credits to inmate sentences.  The lack of formal negotiations has also significantly delayed the BOP's implementation of corrective actions in response to seven OIG reports issued since 2015 that have identified serious deficiencies in BOP programs and policies.

The OIG requests that, within 30 days of the issuance of this memorandum, the BOP provide documentation listing all policies, including but not limited to those related to the FSA, that are pending negotiations with the national union and describe how it will effectively reduce the backlog of all policies slated to be negotiated.

33

## § 3635. Definitions

In this subchapter [18 USCS §§ 3631 et seq.] the following definitions apply:

**(1)** Dyslexia. The term "dyslexia" means an unexpected difficulty in reading for an individual who has the intelligence to be a much better reader, most commonly caused by a difficulty in the phonological processing (the appreciation of the individual sounds of spoken language), which affects the ability of an individual to speak, read, and spell.

**(2)** Dyslexia screening program. The term "dyslexia screening program" means a screening program for dyslexia that is—

    **(A)** evidence-based (as defined in section 8101(21) of the Elementary and Secondary Education Act of 1965 (20 U.S.C. 7801(21))) with proven psychometrics for validity;

    **(B)** efficient and low-cost; and

    **(C)** readily available.

**(3)** Evidence-based recidivism reduction program. The term "evidence-based recidivism reduction program" means either a group or individual activity that—

    **(A)** has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism;

    **(B)** is designed to help prisoners succeed in their communities upon release from prison; and

    **(C)** may include—

        **(i)** social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;

        **(ii)** family relationship building, structured parent-child interaction, and parenting skills;

        **(iii)** classes on morals or ethics;

        **(iv)** academic classes;

        **(v)** cognitive behavioral treatment;

USCS            1

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**(vi)** mentoring;

**(vii)** substance abuse treatment;

**(viii)** vocational training;

**(ix)** faith-based classes or services;

**(x)** civic engagement and reintegrative community services;

**(xi)** a prison job, including through a prison work program;

**(xii)** victim impact classes or other restorative justice programs; and

**(xiii)** trauma counseling and trauma-informed support programs.

**(4)** Prisoner. The term "prisoner" means a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons.

**(5)** Productive activity. The term "productive activity" means either a group or individual activity that is designed to allow prisoners determined as having a minimum or low risk of recidivating to remain productive and thereby maintain a minimum or low risk of recidivating, and may include the delivery of the programs described in paragraph (1) to other prisoners.

**(6)** Risk and needs assessment tool. The term "risk and needs assessment tool" means an objective and statistically validated method through which information is collected and evaluated to determine—

**(A)** as part of the intake process, the risk that a prisoner will recidivate upon release from prison;

**(B)** the recidivism reduction programs that will best minimize the risk that the prisoner will recidivate upon release from prison; and

**(C)** the periodic reassessment of risk that a prisoner will recidivate upon release from prison, based on factors including indicators of progress and of regression, that are dynamic and that can reasonably be expected to change while in prison.

**HISTORY:**
Added Dec. 21, 2018, P. L. 115-391, Title I, § 101(a), 132 Stat. 5207.

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 1:22-cv-01334-CLR   Document 1-1   Filed 06/02/22   Page 36 of 61

procedures for the reduction of FSA Time Credits for inmates under these circumstances. *See* 18 U.S.C. 3632(e). If this occurs, inmates may seek review of the loss of earned FSA Time Credits through the Bureau's Administrative Remedy Program (28 CFR part 542).

Also, inmates may have part or all of the lost FSA Time Credits restored to them, to be determined on a case-by-case basis, after clear conduct for at least four consecutive risk assessments. In the case of a loss of FSA Time Credits due to a violation of the requirements and/or rules of an Evidence-Based Recidivism Reduction program or Productive Activity, an inmate may have FSA Time Credits restored if the inmate successfully completes an Evidence-Based Recidivism Reduction program or Productive Activity assigned to the inmate based on the inmate's risk and needs assessment after the date of the rule or program violation, again, to be determined on a case-by-case basis.

The Bureau also proposes to make conforming amendments in 28 CFR part 541 to regulations on inmate discipline. As part of the FSA Time Credits proposal, the Bureau proposes to add in § 541.3, Table 1 (Prohibited Acts and Available Sanctions), appropriate sanctions to allow for forfeiture of FSA Time Credits in escalating amounts depending on the severity level of the prohibited act committed. The FSA Time Credit forfeiture sanctions mirror the current forfeiture sanctions in place for loss of Good Conduct Time. If an inmate commits a second violation of the same Low Severity prohibited act code within a six months, that inmate may receive a sanction of forfeiture of up to 7 days of FSA Time Credits, but a third violation of the same prohibited act within six months period may result in a sanction of forfeiture of up to 14 days of FSA Time Credits. For commission of a prohibited act in the Moderate category, a sanction up to 30 days of FSA Time Credits credit may be applied. Commission of a High Severity act may result in forfeiture of up to 60 days of FSA Time Credits, and commission of a Greatest Severity act may result in forfeiture of up to 120 days of FSA Time Credits.

All sanctions involving loss of FSA Time Credits may only be imposed by in the discretion of a Disciplinary Hearing Officer (DHO) after the process described in 28 CFR part 541, and may also be appealed through the Bureau's Administrative Remedy Process described in 28 CFR part 542. The procedures in 28 CFR parts 541 and 542 allow for inmate discipline and an appeals process that are both well-established and consistent with current Bureau operations. Bureau DHOs will use their considerable correctional experience and training, as they currently do, and will only, after careful consideration of several factors, including the nature and seriousness of the violation in connection with the FSA Time Credit Program, limit appropriate sanctions to befit the nature of the prohibited act committed.

## Regulatory Analyses

### Executive Orders 12866, 13563, and 13771

This proposed rule falls within a category of actions that the Office of Management and Budget (OMB) has determined constitutes a "significant regulatory actions" under section 3(f) of Executive Order 12866 and, accordingly, it was reviewed by OMB.

The economic impact of this proposed rule is limited to a specific subset of inmates who are eligible to both earn and apply FSA Time Credits towards additional prerelease custody or early transfer to supervised release.

Under the FSA, FSA Time Credits may be earned by an eligible inmate who is assessed to have a minimum or low risk for recidivating and who has had no increased risk of recidivism over the most recent two consecutive assessments conducted by the Bureau. Consistent with the FSA, inmates in Bureau custody are assessed under its risk assessment system, Prisoner Assessment Tool Targeting Estimated Risk and Need (PATTERN), which includes both static and dynamic elements. For example on August 27, 2020, 131,386 inmates had been assessed under PATTERN and received a PATTERN score were in Bureau custody. The PATTERN scores for the entire group of 131,386 were: 50,060 classifed as high; 25,043 classified as medium; 38,084 classified as low; and 18,199 classified as minium. Of these inmates, approximately 65,000 would be ineligible to earn FSA Time Credits under the FSA due to the inmate's crime of conviction. This data represent a snapshot of those inmates in Bureau custody as of August 27, 2020. The Bureau anticipates that this data will change continually, as inmates in custody earn reductions in PATTERN risk classification, based on program participation and other dynamic factors, and inmates enter and release from Bureau custody.

The Bureau anticipates that as a result of this proposed rule and the FSA, additional inmates will engage in programming to earn FSA Time Credits. As discussed above, FSA Time Credits may be earned for successful completion of an Evidence-Based Recidivism Reduction program or Productive Activity that is assigned to an inmate based on the inmate's needs assessment. The current list of these programs can be found at: *https://www.bop.gov/inmates/fsa/docs/evidence_based_recidivism_reduction_programs.pdf.* These programs are available to all inmates regardless of an inmate's elibility to earn FSA Time Credits. At present, the Bureau has existing funding that provides for each of the Evidence-Based Recidivism Reduction programs and Productive Activities listed, so the Bureau will not experience current additional programming costs as a reslt of the proposed rule.

The proposed rule may also result in movement of eligible inmates who earn FSA Time Credits from Bureau facilities to prerelease custody in the community (including Residential Reentry Centers (RRCs) and/or home confinement) earlier in the course of their confinement and for a longer period of time than would have previously occurred. In some cases, this transfer of time from secured confinement to prerelease custody may result in increased costs, depending on the relative costs of the inmate's current facility and the costs associated with housing and/or supervision in prerelease custody.

The proposed rule may also result in the early transfer of inmate from custody to supervised release, functionally shortening their sentences. In such cases, the Bureau would benefit from the avoidance of costs which would otherwise have been incurred to confine the affected inmates for that amount of time.

Notably, this proposed rule is limited to the processes for earning, awarding, and losing FSA Time Credits, and does not address the mechanisms through which those FSA Time Credits may be applied towards additional time in prerelease custody or early transfer to supervised release. Future decisions on that issue will significantly impact the relative amount of cost increases and cost savings to the Bureau. At present, therefore, specific costs or savings for these future actions cannot be calculated. Further, any increased costs or savings resulting from application of this proposed rule will only be realized at the end of an eligible inmate's sentence, as they are transferred to prerelease custody and/or released earlier to commence their term of supervised release. Therefore, the increased costs or cost savings realized from this proposed rule will not be fully realized for years to come, as increasing

Case 1:22-cv-01354-CLR Document 1-1 Filed 06/03/22 Page 37 of 61

numbers of inmates have opportunities to earn FSA Time Credits over their terms of incarceration. Any economic impacts will occur gradually over time as the number of impacted inmates, and the quantity of time credits they accrue, increase.

For these reasons, it is not possible to forecast the actual economic effect which may occur as a result of this proposed rule. However, given the mix of cost increases and savings which may result, the overall long-term economic impact is expected to be marginal in either direction.

*Executive Order 13132*

This proposed rule will not have substantial direct effect on the States, on the relationship between the national government and the States, or on distribution of power and responsibilities among the various levels of government. Therefore, under Executive Order 13132, we determine that this proposed rule does not have sufficient federalism implications to warrant the preparation of a Federalism Assessment.

*Regulatory Flexibility Act*

The Director of the Bureau of Prisons, under the Regulatory Flexibility Act (5 U.S.C. 605(b)), reviewed this proposed rule and by approving it certifies that it will not have a significant economic impact upon a substantial number of small entities for the following reasons: This proposed rule pertains to the correctional management of offenders committed to the custody of the Attorney General or the Director of the Bureau of Prisons, and its economic impact is limited to the Bureau's appropriated funds.

*Unfunded Mandates Reform Act of 1995*

This proposed rule will not result in the expenditure by State, local and tribal governments, in the aggregate, or by the private sector, of $100,000,000 or more in any one year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

*Congressional Review Act.* This proposed rule is a not major rule as defined by the Congressional Review Act, 5 U.S.C. 804. This proposed rule will not result in an annual effect on the economy of $100,000,000 or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign-based companies in domestic and export markets.

List of Subjects

*28 CFR Part 523*

Prisoners.

*28 CFR Part 541*

Administrative practice and procedure, Prisoners.

**Michael D. Carvajal,**

*Director, Federal Bureau of Prisons.*

Under rulemaking authority vested in the Attorney General in 5 U.S.C. 301; 28 U.S.C. 509, 510 and delegated to the Director, Bureau of Prisons in 28 CFR 0.96, we propose to amend 28 CFR parts 523 and 541 as follows:

**PART 523—COMPUTATION OF SENTENCE**

■ 1. The authority citation for 28 CFR part 523 is revised to read as follows:

**Authority:** 5 U.S.C. 301; 18 U.S.C. 3568 (repealed November 1, 1987 as to offenses committed on or after that date), 3621, 3622, 3624, 3632, 3635, 4001, 4042, 4081, 4082 (Repealed in part as to conduct occurring on or after November 1, 1987), 4161–4166 (repealed October 12, 1984 as to offenses committed on or after November 1, 1987). 5006–5024 (Repealed October 12, 1984 as to conduct occurring after that date), 5039; 28 U.S.C. 509, 510.

■ 2. Add Subpart E to part 523, to read as follows:

**Subpart E—First Step Act Time Credits**

Sec.
523.40  Purpose.
523.41  Definitions.
523.42  Earning First Step Act Time Credits.
523.43  Loss of FSA Time Credits.

**§ 523.40  Purpose.**

(a) The purpose of this subpart is to describe time credits authorized by 18 U.S.C. 3632(d)(4) and Section 101 of the First Step Act of 2018 (Pub. L. 115–391, December 21, 2018, 132 Stat 5194) (FSA), hereinafter referred to as "FSA Time Credits".

(b) Generally, as defined and described in this subpart, an eligible inmate who successfully completes an Evidence-Based Recidivism Reduction program or Productive Activity that is assigned to the inmate based on the inmate's risk and needs assessment may earn FSA Time Credits to be applied towards pre-release custody or early transfer to supervised release under 18 U.S.C. 3624(g).

**§ 523.41  Definitions.**

(a) *Evidence-Based Recidivism Reduction program.* (1) *Definition.* A group or individual activity that:

(i) Has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and

(ii) Is designed to help prisoners succeed in their communities upon release from prison.

(2) *Types of Evidence-Based Recidivism Reduction programs.* Evidence-Based Recidivism Reduction programs may include programs involving the following types of activities:

(i) Social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;

(ii) Family relationship building, structured parent-child interaction, and parenting skills;

(iii) Classes on morals or ethics;
(iv) Academic classes;
(v) Cognitive behavioral treatment;
(vi) Mentoring;
(vii) Substance abuse treatment;
(viii) Vocational training;
(ix) Faith-based classes or services;
(x) Civic engagement and reintegrative community services;
(xi) Inmate work/employment opportunities;
(xii) Victim Impact Classes or other Restorative justice programs; and
(xiii) Trauma counseling and trauma-informed support programs.

(b) *Productive activity.* A group or individual activity that allow an inmate with a minimum or low risk of recidivating to remain productive and thereby maintain a minimum or low risk of recidivating.

(c) *Successful completion.* (1) An eligible inmate must successfully complete an Evidence-Based Recidivism Reduction program or Productive Activity before the inmate may earn FSA Time Credits for that Evidence-Based Recidivism Reduction program or Productive Activity.

(2) The requirements to successfully complete an Evidence-Based Recidivism Reduction program or Productive Activity are defined by the Bureau of Prisons (Bureau) for each Evidence-Based Recidivism Reduction program or Productive Activity. The requirements to successfully complete an Evidence-Based Recidivism Reduction program or Productive Activity will be based on the specific elements of each Evidence-Based Recidivism Reduction program or Productive Activity, and may vary based on the curricula, duration, or the specific needs or requirements of either the Evidence-Based Recidivism Reduction program or Productive Activity or the inmate participating.

(d) *Eligible inmates.* (1) *Definition.* An "eligible inmate" is any inmate who is

WASHINGTON   U.S. Senate Majority Whip Dick Durbin (D-IL), Chair of the Senate Judiciary Committee, and U.S. Senator Chuck Grassley (R-IA), Ranking Member of the Senate Judiciary Committee, today urged the Department of Justice (DOJ) to direct the Bureau of Prisons (BOP) to expeditiously revise the proposed rule published on November 25, 2020, regarding earned time credits authorized by the First Step Act of 2018 (FSA). In a letter to Attorney General Merrick Garland, the Senators highlighted why the previous administration's proposed rule would undermine the FSA's incentive structure, decrease program participation, and ultimately undercut the effectiveness of the FSA.

We ask that you reevaluate and amend the rule consistent with the statute's goals of incentivizing and increasing program participation to reduce recidivism," wrote Durbin and Grassley. "Establishing robust programming and a fair system to earn time credits is critical to meeting the FSA's goal of reducing recidivism."

In their letter, Durbin and Grassley said that the proposed rule greatly restricts the ability to earn credits, allows credits to be earned only for programs that were assigned and completed after January 15, 2020 (more than two years after the FSA's date of enactment), excludes prisoners in residential reentry centers or home detention from earning credits, and imposes unduly harsh penalties on inmates to lose credits.

Full text of the today's letter is available here and below:

May 5, 2021

Dear Attorney General Garland:

We respectfully request that you direct the Bureau of Prisons (BOP) to expeditiously revise the proposed rule published on November 25, 2020, regarding earned time credits authorized by the First Step Act of 2018 (FSA). As proposed, the rule severely limits the incentive structure designed to increase program participation and would undercut the effectiveness of the FSA. We ask that you reevaluate and amend the rule consistent with the statute's goals of incentivizing and increasing program participation to reduce recidivism.

The proposed rule undermines the FSA's incentive structure in several respects.  First, by defining a day as eight hours of programming the rule greatly restricts the ability to earn credits. Under the FSA, eligible inmates "shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming [EBRR] or productive activities [PAs]." While not statutorily defined, the plain meaning of a day of participation is every calendar day during which a person successfully participates in an EBRR or PA, with the length of participation determined by the program. Instead, the proposed rule defines a day as "one eight-hour period" of a completed EBRR or PA. Using this definition, an inmate who participates in a program one hour a day for eight days would earn just one "day" of participation under the FSA. Given the

Second, the proposed rule allows credits to be earned only for programs that were assigned and completed after January 15, 2020, more than two years after the FSA's date of enactment. The FSA does not require BOP to limit earned time credits to completion of assigned programming. BOP's inclusion of this limitation in the proposed rule is particularly troublesome because BOP has not developed an effective needs assessment, as required by the FSA. Under the proposed rule, inmates would not be rewarded for self-identifying needs and voluntarily participating in programming. The proposed rule also, without authority or explanation, prohibits credits for programs completed before January 15, 2020, when the FSA allows for credits based on all programming completed after the statute's enactment on December 21, 2018.

Third, the FSA directs that all eligible federal prisoners in BOP custody shall earn credits for program participation, but the proposed rule would exclude prisoners in residential reentry centers (RRCs) or home detention. Because prisoners in RRCs and home detention are in BOP custody, the rule is contrary to the FSA. In fact, the FSA specifically anticipated that prisoners on home detention would continue to participate in programming by listing program participation as one of a few authorized reasons prisoners may leave home while on detention.

Finally, we are concerned that the proposed rule's penalties are unduly harsh. The rule proposes that inmates may lose earned time credits "for violations of prison rules, or requirements and/or rules of an [EBRR or PA]," applying the same procedures used for loss of good time credits. Especially when combined with the time required to earn credits under the proposed rule, the penalty for violations would be too severe. For example, one unexcused absence from a work assignment could result in the loss of 30 days of earned credits, although earning those credits would require completing 720 hours of programming. The rule also imposes penalties for violations of program requirements, rather than just violations of "prison rules or [EBRR or PA] rules," as the FSA requires, suggesting that failure to fulfill the requirements of a program not only could result not only in a failure to earn time credits for participation, but also the loss of credits previously earned..

While losing hard-earned credits would be easy, the rule makes restoring credits too difficult. The FSA simply requires "a procedure to restore time credits that a prisoner lost as a result of a rule violation, based on the prisoner's individual progress." However, the proposed rule would only allow for restoration after "clear conduct for at least four consecutive risk and needs assessments." These assessments may only be completed annually, so it could take a prisoner at least four years to restore lost credits, longer than the average sentence.

For these reasons, we ask that you direct BOP to expeditiously revise the proposed rule consistent with the comments above. Establishing robust programming and a fair system to earn time credits is critical to meeting the FSA's goal of reducing recidivism.

Thank you for your time and consideration. We look forward to your prompt response.

```
CUMH5  540*23 *           SENTENCE MONITORING          *      11-15-2021
AGE 003 OF 003 *          COMPUTATION DATA             *      10:29:02
                          AS OF 11-15-2021
```

REGNO..: 90424-083 NAME: POTARAZU, SREEDHAR


```
TOTAL PRIOR CREDIT TIME.........: 33
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 539
TOTAL GCT EARNED................: 216
STATUTORY RELEASE DATE PROJECTED: 12-22-2025
ELDERLY OFFENDER TWO THIRDS DATE: 02-14-2024
EXPIRATION FULL TERM DATE.......: 06-14-2027
TIME SERVED.....................:    4 YEARS     5 MONTHS
PERCENTAGE OF FULL TERM SERVED..:  44.2
PERCENT OF STATUTORY TERM SERVED:  51.8
```

```
3621E COMPLETE RESIDENT PROGRAM.: 11-15-2021
3621E COMPLETE COMMUNITY PROGRAM: /
3621E RELEASE DATE..............: 12-22-2024
```

```
PROJECTED SATISFACTION DATE.....: 12-22-2024
PROJECTED SATISFACTION METHOD...: 3621E COND
```

REMARKS.......: 4/9/20 GCT UPDATED PURSUANT TO FSA.JMM;3-1-21 764.F/JTP;


G0000      TRANSACTION SUCCESSFULLY COMPLETED

4o

DATE REVIEWED: _____12/11/2019_____

INSTITUTION:   CUM FPC_____   UNIT:   ___GEN_____

INMATE NAME:   Potarazu   REG NO:   ____90474-083____

FIRST STEP ACT (Circle One):   (ELIGIBLE)   /   INELIGIBLE

RECIDIVISM RISK LEVEL (Circle One):   (MINIMUM)   LOW   MEDIUM   HIGH

41

9.   [**INMATE TUTORS** §544.83.   Institutions may establish an inmate tutor/aide program.   Guidelines shall be developed regarding the training and supervision of inmate tutors/aides where such programs are available.]

When implemented effectively, an inmate tutor/aide program provides an effective alternative to combat inmate idleness and to promote positive use of the inmate labor force.

When feasible, institutions are encouraged to establish an inmate tutor/aide program to use as many **inmate tutors**/aides as needed.

At a minimum, guidelines should address:

#   The supervision, training, and certification of **inmate tutors**/aides,

#   Performance pay for **inmate tutors**/aides,

#   Position description for **inmate tutors**/aides, and

#   Other concerns as identified locally.

**Inmate tutors**/aids cannot serve as the primary instructors for the GED or ESL programs. They can only assist Bureau staff or contract instructors with instruction delivery.

+ However, working under the general guidance and supervision of Bureau staff or contract instructors, **inmate tutors**/aids can teach adult continuing courses (ACEs) and other self improvement classes.

10.   **PROGRAM STANDARDS.**   The following standards apply to education programs and full-time Civil Service and contract teachers:

a.   **Instruction Time.**   All full-time teachers and education specialists must spend at **least** 75 percent of their 40-hour workweek in instruction or in work related to instruction, with a minimum of 50 percent of their work hours spent in direct classroom instruction.

+ Full-time test administrators are not expected to meet the 50 percent direct classroom instruction requirement.

pro;

**1**

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

90424083
4ᴅ



U.S. Department of Justice

Federal Bureau of Prisons

*Federal Correctional Institution*

---

14601 Burbridge Road, SE
Cumberland, MD  21502

Date:    October 8, 2020

Reply To
Attn Of:    R. Cosgrove, Education Specialist

Subject:    Inmate Potarazu #90424-083

To:    Mr. Bosley, Case Manager


Inmate Potarazu #90424-083 has been a GED tutor at FPC Cumberland since May 2018.
During that time he has also been employed as an ACE tutor and a Life Skills tutor.
Potarazu is responsible for many inmates obtaining their GED or improving life
skills such as reading and basic math. Potarazu works 160 per month as a GED tutor.
He typically spends 20 hours a month as an ACE instructor. He also works as a Life
Skills tutor 10 hours a week.   During the COVID-19 pandemic he was able to ensure
that inmate students continued to progress towards their GED, even without
immediate supervision, due to staff shortages associated with the pandemic.
Without his help in ensuring GED classes continued during this difficult time,
many inmate students would not have continued to progress. He continues to tutor
and mentor GED students to this day.

43



**U.S. Department of Justice**

Federal Bureau of Prisons

_Federal Correctional Institution_
_14601 Burbridge Road, SE_
_Cumberland, Maryland   21502_

Date:       03-27-2020

Reply To
Attn Of:    C. Rotruck
            Education Specialist
            Federal Correctional Institution, Cumberland, MD.

Subject:    Potarazu, S. #90424-083
            Evaluation Update

To:         C. Miller
            G Unit Case Manager

      Mr. Miller, inmate Potarazu #90424-083 has maintained an outstanding work performance. This memo serves as a brief evaluation update of Potarazu's work performance, including additional job assignments. Mr. Potarazu has also assisted staff with developing and teaching a ACE program for peers that meet 10 weeks quarterly. He continues to assist staff in clerical job assignments, tutoring and creating ideas for easier learning for success of his peers.

      Mr. Potarazu has personally tutored over 200 inmates on GED work. His dedication to the GED program resonates with inmates and motivates them in a way staff members cannot achieve.   Students gravitate to Mr. Potarazu and often request to be put in his class. Through Mr. Potarazu's mentorship inmates who were struggling in life and dealing with prison seem to benefit from his maturity and outstanding leadership.

      Mr. Potarazu has been able to assist all staff in the Education Department with numerous job duties, including Admission and Orientation of new inmates to a prison environment. This job task is done bi-weekly and is a very valuable resource that staff use to make sure new inmates are aware of what is expected of them in the Education Department.

      Mr. Potarazu's dependability is also one of his stronger traits.   In approximately 2 years of Potarazu's working in the FPC Education Department for all staff, he has never been unaccounted for, or has ever placed any kind of disruptive attitude while working.

44

```
 CUMA4        *          INMATE EDUCATION DATA         *     12-15-2020
PAGE 001 OF 001 *    PROGRAM REVIEW / WITHDRAWAL INTERVIEW  *     13:15:10

REGISTER NO: 90424-083     NAME..: POTARAZU               FUNC: PRT
FORMAT.....: REVIEW        RSP OF: CUM-CUMBERLAND FCI

-------------------------- LITERACY PROGRAM --------------------------
11-02-2020 /REVIEW /RC            /CUM
             TYPE: OTHER          (POTARAZU CONTINUES TO WORK AS A GED AND )
                                  (A PARENTING TUTOR. OUSTANDING JOB.      )
                                  (DOES EXTREMELY WELL IN MOTIVATING HIS   )
                                  (GED CLASS. KEPT GED CLASS MOVING FORWARD)
                                  (DURING STAFF SHORTAGE IN EDUCATION.     )
                                  (TUTORING AT CUMBERLAND SINCE MAY 2018.  )
08-20-2020 /REVIEW /CR            /CUM
             TYPE: OTHER          (THROUGH HIS PRODUCTIVE EFFORTS          )
                                  (TUTORING AND MENTORING, 14 INMATES      )
                                  (EARNED THEIR GED'S SINCE HE BEGAN       )
                                  (WORKING IN EDUCATION.                   )
07-08-2020 /REVIEW /CR            /CUM
             TYPE: OTHER          (POTARAZU CONTINUES THE ASSIGNED DUTY OF )
                                  (PRIMARY TUTOR/INSTRUCTOR DUE TO STAFF   )
                                  (SHORTAGE.  HE HAS DONE AN EXTRAORDINARY )
                                  (JOB KEEPING THE GED STUDENTS ON TRACK   )
                                  (WITH LITTLE SUPERVISION. HAS ALSO BEEN  )
                                  (INSTRUMENTAL IN THE PARENTING PROGRAM.  )
08-21-2017 /REVIEW /RC            /CUM
             TYPE: INITIAL        (GED UNK TO GED HAS.                     )
                                  (VERIFIED IN HSI PSI. (DOCORATE DEGREE). )

-------------------------- ESL PROGRAM --------------------------
08-21-2017 /REVIEW /RC            /CUM
             TYPE: INITIAL        (ESL HAS.                                )
                                  (ENGLISH PROFICIENT.                     )




G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

45

# Certificate of Recognition

## This Is To Certify That

Sreedhar Potarazu

(Name)

## Has Been Recognized For

Outstanding Effort as a GED Tutor

(Reason)

on December 19, 2018

(Date)

at FPC Cumberland

(Location)

R. Clark

(Presenter)

www.presentablecertificates.net

# *FCI Cumberland*
# *Education Department*
# *Tutor Training Handbook*

Adult education is a broad and diverse concept. There are many definitions, purposes and goals for adult education. In a generic sense, the term "adult education" can be defined as any learning situation or environment that involves adults.

Learning that takes place may occur purposely and/or incidentally. A systematically organized learning environment includes academic classroom settings, workshops, and seminars. Class attendance is important and textbooks are utilized in this organized format for learning. Lesson plans are developed and specific learning objectives are established to help direct and assess the learning experience. When knowledge is gained incidentally, learning takes place in unplanned activities, interpersonal relationships, and experiential daily living.

Now that the definition and concept of adult education have been simplified, a philosophy of adult education can be established. From a philosophical perspective, every adult should be able to express himself constructively and creatively.

The philosophy of adult education can be narrowed down to two general premises. Premise Number One purports that the adult learner should understand himself, his abilities and limitations in order to change his behavior to some degree. Premise Number Two purports that as a responsible, productive citizen, the adult learner should achieve constructive goals in physical, cultural, vocational, political, and spiritual perspectives.

Every society has a responsibility to teach adults in community and correctional settings. Although the structures and implementation of programming may vary, the purposes of adult education should remain comparatively the same. The ultimate goal of adult education should be to help the learner achieve a degree of happiness and meaning in life.

place. You are the liaison between the student and the teacher.

Generally speaking, the term "tutor" can be defined as one who instructs privately. However, the definition of tutor has been modified and expanded in many adult education programs.

The concept of tutor is just as broad and diverse as the concept of adult basic education. These concepts should be developed creatively to meet the needs of the clientele in the specific program or setting.

Whether in community settings or correctional settings, the tutor can be trained to work with students individually or in large groups. Tutors are a vital aspect to the learning process. Effective tutors require substantial competence both in helping adults to learn and relating well to their learning styles and cultural diversities.

Tutors should be aware of individual learning styles and help facilitate a learning environment where instruction is flexible. Through effective tutor training, you will be able to recognize characteristics of the adult learner, various learning styles, and effective prescriptive teaching strategies.

Tutors are regarded as paraprofessionals in the classroom setting. They assist the teacher in many ways. From grading papers to teaching group lessons, your responsibilities will vary from day to day. To establish and maintain paraprofessionalism, tutor training is essential. This training will be provided for tutors on the job.

Like teachers, tutors should have a working knowledge of teaching strategies, materials, and skill development in the classroom. Tutors should be empathetic, patient, flexible, and committed to the goals and objectives of the adult basic education program.

The training you receive as a tutor has a two-fold purpose. First of all, the training will prepare you for the classroom environment. Secondly, tutor training will enable you to develop skill necessary for related job markets in the community. Tutor certification is a means to ensure quality training for career development.

Incarceration limits the body, but not the mind. Now is the time to explore

characteristics. Positive characteristics of the tutor should compliment the positive characteristics of the adult learner.

Some positive characteristics of tutors are:

| | | |
|---|---|---|
| Patience | Enthusiasm | Flexibility |
| Creativity | Empathy | Persistence |
| Understanding | Humor | Organization |
| Sensitivity | | |

Remember that you are human and not "Super Teacher". Honest mistakes are allowable, but perfectionism is not acceptable. Give yourself room to breathe and look for improvements slowly. Give yourself a chance to develop into the role of tutor. By being kind to yourself, you will be kind to your students.

Make a commitment to teaching and learning. Familiarize yourself with the objectives and goals of the education program. The more you teach, the more you learn.

49

PAGES   51 - 57

DE-IDENTIFIED   FSA

COMPUTATIONS   OF   SIMILARLY

SITUATED   INMATES   AS   EXAMPLES

OF   ISSUES   WITH   ISSUANCE

AND   APPLICATION   OF   FSA TIME

CREDITS   AND   HOME DETENTION

ELIGIBILITY   DATES

```
  CUMJF  540*23  *              SENTENCE MONITORING           *      03-02-2022
PAGE 001         *              COMPUTATION DATA              *      11:48:21
                               AS OF 03-02-2022
```

REGNO..: ▉▉▉▉▉ NAME: ▉▉▉ ▉▉▉▉▉▉▉▉

```
FBI NO...........: ▉▉▉▉▉▉           DATE OF BIRTH: ▉▉▉▉▉▉▉▉▉▉▉▉▉
ARS1.............: CUM/A-DES
UNIT.............: CAMP GEN          QUARTERS.....: ▉▉▉▉▉
DETAINERS........: NO                NOTIFICATIONS: NO
```

FSA ELIGIBILITY STATUS IS: ELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 08-04-2022

FINAL STATUTORY RELEASE FOR INMATE.: 02-04-2024 VIA 3621E COND
            WITH APPLIED FSA CREDITS.:   365 DAYS
THE INMATE IS PROJECTED FOR RELEASE: 02-04-2023 VIA FSRDAP CND

REMARKS........: 3-2-22: PRD ADJ DUE TO FSA FTC APPLIED. F/RXS

----------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

```
COURT OF JURISDICTION...........: VIRGINIA, EASTERN DISTRICT
DOCKET NUMBER...................: ▉▉▉▉▉▉▉▉▉▉
JUDGE...........................: ▉▉▉▉▉
DATE SENTENCED/PROBATION IMPOSED: 06-21-2019
DATE COMMITTED..................: 07-23-2019
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                  FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $100.00        $00.00          $00.00       $00.00
```

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT: ▉▉▉▉▉▉▉▉

-------------------------CURRENT OBLIGATION NO: 010 -------------------------
OFFENSE CODE....:  153     18:286,371 FRAUD, OTHER
OFF/CHG: 15:78J(B) & 78FF 17CFR:240.10B-5; & 18:2 SECURITIES FRAUD.

```
SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.:   78 MONTHS
TERM OF SUPERVISION............:    3 YEARS
DATE OF OFFENSE................: 09-01-2018
```

G0002      MORE PAGES TO FOLLOW . . .

51

```
     CUMJF  540*23  *           SENTENCE MONITORING          *     03-02-2022
PAGE 002            *           COMPUTATION DATA             *     11:48:21
                                 AS OF 03-02-2022
```

REGNO..: ▓▓▓▓▓▓   NAME: ▓▓▓▓▓▓▓▓▓▓▓

```
-------------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 03-02-2022 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 01-13-2021 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 07-23-2019
TOTAL TERM IN EFFECT............:   78 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    6 YEARS        6 MONTHS
EARLIEST DATE OF OFFENSE........: 09-01-2018

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                     10-05-2018     10-05-2018

TOTAL PRIOR CREDIT TIME.........: 1
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 351
TOTAL GCT EARNED................: 108
STATUTORY RELEASE DATE PROJECTED: 02-04-2025
ELDERLY OFFENDER TWO THIRDS DATE: 11-22-2023
EXPIRATION FULL TERM DATE.......: 01-21-2026
TIME SERVED.....................:    2 YEARS        7 MONTHS       9 DAYS
PERCENTAGE OF FULL TERM SERVED..: 40.1
PERCENT OF STATUTORY TERM SERVED: 47.1

3621E COMPLETE RESIDENT PROGRAM.: 12-05-2020
3621E COMPLETE COMMUNITY PROGRAM: /
3621E RELEASE DATE..............: 02-04-2024
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

52

```
  CUMJF  540*23 *              SENTENCE MONITORING           *      03-02-2022
PAGE 003 OF 003 *              COMPUTATION DATA              *      11:48:21
                               AS OF 03-02-2022
```

REGNO..: ██████████NAME: ████████████


```
PROJECTED SATISFACTION DATE.....: 02-04-2023  ⟵
PROJECTED SATISFACTION METHOD...: FSRDAP CND
   WITH FSA CREDITS INCLUDED...:  365   ⟵

REMARKS.......: 7-23-19 VS TO CUM; 11-16-20 3621E 764 F/BNB; 12-28-20 REST ORD
               F/BNB;
```


G0000       TRANSACTION SUCCESSFULLY COMPLETED

53

```
  CUMJF  542*22 *                SENTENCE MONITORING              *    03-02-2022
PAGE 001 OF 001 *                 GOOD TIME DATA                  *    11:48:39
                                 AS OF  03-02-2022
```

```
REGNO...: ██████████    NAME██████████████
ARS 1...: CUM A-DES                               PLRA
COMPUTATION NUMBER..: 010                 PRT   ACT DT:
LAST UPDATED:  DATE.: 03-02-2022     FACL..: DSC   CALC: AUTOMATIC
UNIT................: CAMP GEN        QUARTERS...........: ██████████
DATE COMP BEGINS....: 07-23-2019      ·  ' · COMP STATUS.........: COMPLETE
TOTAL JAIL CREDIT...: 1              TOTAL INOP TIME.....: 0
CURRENT REL DT......: 10-05-2025 SUN  EXPIRES FULL TERM DT: 01-21-2026
PROJ SATISFACT DT...: 02-04-2023 SAT  PROJ SATISF METHOD..: FSRDAP CND
ACTUAL SATISFACT DT.:                 ACTUAL SATISF METHOD:
DAYS REMAINING......:                 FINAL PUBLC LAW DAYS:
GED PART STATUS.....:                 DEPORT ORDER DATED..:
```

```
------------------------GOOD CONDUCT TIME AMOUNTS-------------------------
```

| START DATE | STOP DATE | MAX DIS | POSSIBLE TO FFT | ACTUAL TOTALS DIS | FFT | VESTED AMOUNT | VESTED DATE |
|---|---|---|---|---|---|---|---|
| 07-22-2019 | 07-21-2020 | 54 | 54 | | | | |
| 07-22-2020 | 07-21-2021 | 54 | 108 | | | | |
| 07-22-2021 | 07-21-2022 | 54 | | | | | |
| 07-22-2022 | 07-21-2023 | 54 | | | | | |
| 07-22-2023 | 07-21-2024 | 54 | | | | | |
| 07-22-2024 | 07-21-2025 | 54 | | | | | |
| 07-22-2025 | 01-21-2026 | 27 | | | | | |

```
    TOTAL EARNED AMOUNT.........................................:    108
    TOTAL EARNED AND PROJECTED AMOUNT..........................:    351
```

```
G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

54

```
CUMAD  540*23*       SENTENCE MONITORING           02-28-2022
PAGE 001      *       COMPUTATION DATA          *  10:30:33
                      AS OF 02-28-2022
```

REGNO..: ▓▓▓▓▓▓  NAME ▓▓▓▓▓▓▓

```
FBI NO..........: ▓▓▓▓▓▓        DATE OF BIRTH: ▓▓▓▓▓▓▓
ARS1............: CUM/A-DES
UNIT............: CAMP PGM       QUARTERS.....: ▓▓▓▓▓
DETAINERS.......: NO             NOTIFICATIONS: NO
```

FSA ELIGIBILITY STATUS IS: ELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT. *Due to delay*

HOME DETENTION ELIGIBILITY DATE....: 09-12-2021 ← *in issuance of*

FINAL STATUTORY RELEASE FOR INMATE.: 03-12-2023 VIA 3621E CMPL  *FTC, credits*
    WITH APPLIED FSA CREDITS.: 365 DAYS ← *had to be*
THE INMATE IS PROJECTED FOR RELEASE: 09-08-2022 VIA FSRDAP REL

REMARKS........: 01-24-2022: PRD ADJ DUE TO FSA FTC APPLIED C/DRW.  *forfeited*
    01-27-22: UPDATED TO FSRDAP CND. C/RAC

      RELEASE AUDIT COMPLETED ON 02-17-2022 BY DSCC
----------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

```
COURT OF JURISDICTION...........: ▓▓▓▓▓▓, ▓▓▓▓▓▓
DOCKET NUMBER...................: ▓▓▓▓▓▓
JUDGE...........................: ▓▓▓▓▓▓
DATE SENTENCED/PROBATION IMPOSED: 08-08-2011
DATE COMMITTED..................: 09-23-2011
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                FELONY ASSESS  MISDMNR ASSESS  FINES      COSTS
NON-COMMITTED.: $100.00        $00.00          $00.00     $00.00

RESTITUTION...: PROPERTY: NO   SERVICES: NO    AMOUNT: $00.00
```

G0002      MORE PAGES TO FOLLOW . . .

55

REGNO..:███████████ NAME:████████████

----------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....: 409 21:841 & 846 SEC 841-851
OFF/CHG: 21:841(A)(1) & 846 CONSP TO DIST AND PWITD 50 GRAMS OR MORE OF
        COCAINE BASE (CRACK) & A QTY OF MARIJUANA.

 SENTENCE PROCEDURE..............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.: 240 MONTHS
 TERM OF SUPERVISION............: 5 YEARS
 NEW SENTENCE IMPOSED...........: 192 MONTHS
 BASIS FOR CHANGE...............: USSG DRG QNTTY DCSN 11-01-2014
 DATE OF OFFENSE................: 07-16-2010

----------------------CURRENT COMPUTATION NO: 010 --------------------------

COMPUTATION 010 WAS LAST UPDATED ON 02-25-2022 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 02-23-2016 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 08-08-2011
TOTAL TERM IN EFFECT...........: 192 MONTHS
TOTAL TERM IN EFFECT CONVERTED..: 16 YEARS
EARLIEST DATE OF OFFENSE........: 07-16-2010

JAIL CREDIT....................: FROM DATE     THRU DATE
                                 10-17-2009    10-18-2009
                                 07-27-2010    08-07-2011

G0002      MORE PAGES TO FOLLOW . . .

```
  CUMAD   540*23 *           SENTENCE MONITORING          *    02-28-2022
PAGE 003 OF 003 *             COMPUTATION DATA            *    10:30:33
                             AS OF 02-28-2022


REGNO..: ███████ NAME : ████████████


TOTAL PRIOR CREDIT TIME........: 379
TOTAL INOPERATIVE TIME.........: 0
TOTAL GCT EARNED AND PROJECTED..: 864
TOTAL GCT EARNED...............: 594
STATUTORY RELEASE DATE PROJECTED: 03-12-2024
ELDERLY OFFENDER TWO THIRDS DATE: 03-25-2021
EXPIRATION FULL TERM DATE.......: 07-24-2026
TIME SERVED....................:     11 YEARS      7 MONTHS      4 DAYS
PERCENTAGE OF FULL TERM SERVED..: 72.5
PERCENT OF STATUTORY TERM SERVED: 85.0

3621E COMPLETE RESIDENT PROGRAM.: 05-01-2022
3621E COMPLETE COMMUNITY PROGRAM: 09-08-2022
3621E RELEASE DATE.............: 03-12-2023

PROJECTED SATISFACTION DATE.....: 09-08-2022
PROJECTED SATISFACTION METHOD...: FSRDAP REL
    WITH FSA CREDITS INCLUDED...: 185

REMARKS.......: 02-22-16: UPDATE COMNP PER DGA ORDER /C-RCR.
                03/13/20 GCT FSA UPDATE 4/ELM. 08-17-2021: 764 UPDATE. C/JWC.
                02-25-22 RCVD 628 C/CJM
```

*handwritten:* INMATE LOST FTC DAYS DUE TO DELAYED IMPLEMENTATI⟨ON⟩ BY BOP

```
  G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

*handwritten:* 59

**FSA Recidivism Risk Assessment (PATTERN 01.02.01)**

Register Number:90424-083, Last Name:POTARAZU

## U.S. DEPARTMENT OF JUSTICE        FEDERAL BUREAU OF PRISONS

| | |
|---|---|
| Register Number: 90424-083 | Risk Level Inmate....: R-MIN |
| Inmate Name |   General Level......: R-MIN (-12) |
|   Last.........: POTARAZU |   Violent Level......: R-MIN (-4) |
|   First........: SREEDHAR | Security Level Inmate: MINIMUM |
|   Middle.......: | Security Level Facl..: MINIMUM |
|   Suffix.......: | Responsible Facility.: CUM |
| Gender.........: MALE | Start Incarceration..: 07/19/2017 |

**PATTERN Worksheet Summary**

| Item | – Value | – General Score | – Violent Score |
|---|---|---|---|
| Current Age | 56 | 7 | 4 |
| Walsh w/Conviction | FALSE | 0 | 0 |
| Violent Offense (PATTERN) | FALSE | 0 | 0 |
| Criminal History Points | 0 | 0 | 0 |
| History of Escapes | 0 | 0 | 0 |
| History of Violence | 0 | 0 | 0 |
| Education Score | HighSchoolDegreeOrGED | -4 | -2 |
| Drug Program Status | NoNeed | -9 | -3 |
| All Incident Reports (120 Months) | 0 | 0 | 0 |
| Serious Incident Reports (120 Months) | 0 | 0 | 0 |
| Time Since Last Incident Report | N/A | 0 | 0 |
| Time Since Last Serious Incident Report | N/A | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 8 | -6 | -3 |
| Work Programs | 0 | 0 | 0 |
| | | Total -12 | -4 |

_58_

*SAMPLE CALCULATION* *RRC*
## RRC Placement Under the Second Chance Act
*POTARAZU*

**5 Factors for Initial Consideration:**
1. Resources of the Facility Contemplated:
2. Circumstances of the Offense:
3. History and Characters of the Prisoner:
4. Statements/Recommendations from the Sentencing Court:
5. Policy Statement issues by the U. S. Sentencing Commission:

| Name: |
| --- |
| Reg. No.: |
| PRD: |

**Determining Length of RRC Placement** – Provided the inmate is viewed to be appropriate for RRC placement given the five factors listed above, and the contents of P.S. 7310.04, Community Corrections Center Utilization and Transfer Procedure, calculate the length of placement using the following formula as a guide:

**Sentence Length (add State time served if no break):** Start all cases at the *3-month mark and adjust accordingly:

| 6 to 23 months: | Subtract 1 |
| 24 to 59 months: | No Adjustment |
| 60 to 119 months: | Add 1 |
| 120 to 179 months: | (Add 2) |
| 180+ months: | Add 3 |

**Adjustment/Conduct:** Has the inmate had a positive conduct record? If there is a disciplinary history, has there been a significant period of clear conduct or much improvement in behavior in the latter half of the inmate's incarceration?

| Positive or Much Improved: | (Add 1) |
| Average: | No Adjustment |
| Negative: | Subtract 1 |

**Program Participation:** Has the inmate been continually involved in positive, recommended programming, especially in the latter half of his incarceration? Has program participation been sporadic and/or limited to programs considered to be quasi-mandatory? Has the inmate refused most or all recommended programming?

| Continual Programming: | (Add 1) |
| Sporadic Programming: | No Adjustment |
| Refused Most Programming: | Subtract 1 |

**Community Resources:** The following adjustments shall only be applied if the inmate received the "Add 1" adjustment for continual, positive Program Participation (above). If Program Participation is viewed as sporadic or minimal, no adjustment for the below items shall be applied:

| Needs to Establish a Release Residence: | (Add 1) |  |
| --- | --- | --- |
| Needs to Establish Release Employment: | (Add 1) |  |
| Has Limited Finances (received < $300 in total deposits in last 6 mos): | Add 1 | Case Manager's Signature |
| Has Limited Visits (received <4 visits in the last year): | (Add 1) |  |
| Has Medical Needs that may Complicate Finding Employment: | Add 1 |  |
| Has Mental Health Needs that may Complicate Finding Employment: | (Add 1) | Date |

**Calculation Line:** (All cases start at the *3-month mark.  Maximum = 12 months.  Minimum = 1 month.)

0   1   2   *3   4   5   6   7   8   9   10   (11)   12
[..................................................................................]

BASELINE          ADD 8 POINTS

59

Administrative Remedy No. 1103252-A1     *CARES ACT*
Part B - Response                        *BP-11 RESPONSE - POTARAZU*

This is in response to your Central Office Administrative Remedy
Appeal where you disagree with the decision at FCI Cumberland to
deny your request for home confinement.  You claim other inmates
with serious offenses and no COVID risk factors have been
released to home confinement.  You allege this denial is a
violation of the Equal Protection Clause as it purposely
discriminates against Hindu inmates.  You request transfer to
home confinement under the CARES Act.

The Bureau of Prisons (BOP) is taking extraordinary measures to
contain the spread of COVID-19 and to treat any infected
inmates.  Additionally, in the BOP's continued effort to protect
the health and safety of staff and inmates during the COVID-19
pandemic, inmates are being reviewed for direct placement on
home confinement.  In doing so, several factors are assessed and
referrals are made based on appropriateness for home
confinement.  Each case is reviewed and determined on an
independent basis.

The Warden and Regional Director adequately addressed your
complaint and we concur with the responses provided.  You were
reviewed for home confinement placement and deemed ineligible
for placement at this time.  You were advised of the reason for
this decision and we find you received proper and fair
consideration pursuant to the Attorney General's memoranda, and
local guidance and direction regarding the COVID-19 pandemic.

It is noted you were RDAP complete as of November 11, 2021, and
are currently 3621(e) release eligible.  As such, a transfer
request was submitted on your behalf.  You may also discuss your
pending transfer request further with your current Unit Team.

Accordingly, your appeal is denied.


_____3/20/22_____                    _____
Date                                     Ian Connors, Administrator
                                         National Inmate Appeals

60

RESPONSE FROM DSCC COMPUTATION
CENTER REGARDING FTC

Below is a menage from Michelle:

This is automatically updated now in our system monthly. This should be updated the beginning of May. Any further questions will need to be addressed with the inmate's unit team at the institution.

Thank you,
Michelle



DATE: 03/17/2022 12:36:03 AM

Reply from Michelle:
DRE Office of Research & Evaluations generates lists for FTC updates. We receive them monthly and will update his computation when we receive the new list for April.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DATE: 05/12/2022 12:06:07 PM

This came from Michelle this am:

As the Bureau has begun to award Federal Time Credits (FTC) and to ensure inmates who are eligible to both earn and apply FTCs are awarded their credits timely, an interim implementation plan has been established. While all eligible inmates are able to earn credits, the Bureau is prioritizing inmates who are within 24 months of their Statutory Release Date and eligible to both earn and apply FTCs to their release date. The Bureau is in the final stages of development and testing of an auto-calculation application. Once finalized, all eligible inmates will have their records updated, and their FTCs applied consistent with the Federal Rules language. Neither the inmate's eligibility status nor the basis for the status is public information.

For additional information regarding the First Step Act as well as Federal Time Credits, please see the First Step Act FAQs on the BOP website www.bop.gov.

6B