IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SREEDHAR POTARAZU, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-22-1334 |
| WARDEN, FEDERAL CORRECTIONAL INSTITUTION – CUMBERLAND,[1] | * | |
| | * | |
| Respondent. | | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Respondent Warden, Federal Correctional Institution – Cumberland's ("the Warden") Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 21) and Petitioner Sreedhar Potarazu's: (1) Motion for Reconsideration of Due Date (ECF No. 18); (2) Motion for Summary Judgment (ECF No. 19); (3) Motion for Expedited Ruling (ECF No. 24); (4) Motion for Judicial Notice and Hearing (ECF No. 26); (5) Motion for Preliminary Emergency Injunction (ECF No. 27); (6) Motion for Discovery (ECF No. 29); (7) Motion for Sanctions (ECF No. 30); (8) Second Motion for Appointment of Counsel (ECF No. 32); and (9) Emergency Motion to Issue Writ of Mandamus (ECF No. 43). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will deny the Motions.

---

[1] The proper respondent in an action for habeas corpus is the the petitioner's custodian. See 28 U.S.C. § 2242; Rumsfeld v. Padilla, 542 U.S. 426, 435–36 (2004). The Warden of Federal Correctional Institution – Cumberland, the facility where Potarazu was incarcerated at the time of filing, is the proper Respondent in this case. The Clerk shall amend the docket accordingly.

## I.     BACKGROUND

On June 2, 2022, Petitioner Sreedhar Potarazu filed the above-captioned Petition for Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1). Potarazu was a federal prisoner incarcerated at Federal Correctional Institution – Cumberland ("FCI-Cumberland") and he is now in prerelease custody at a halfway house in Baltimore, Maryland. (Pet. Habeas Corpus ["Pet."] at 1, ECF No. 1; Notice of Change of Address at 1, ECF No. 52). Potarazu asks the Court to direct the Bureau of Prisons ("BOP") to issue an updated sentence calculation reflecting his time credits pursuant to the First Step Act ("FSA") and transfer him to prerelease custody. (Pet. at 15−16). Potarazu filed numerous supplements to his Petition, including Exhibits and Correspondence. (ECF Nos. 3−8, 10−13, and 15).

When he filed the Petition, Potarazu was serving a 119-month sentence at FCI-Cumberland for inducing interstate travel to commit fraud, in violation of 18 U.S.C. § 2314, and willful failure to account for and pay employment taxes, in violation of 26 U.S.C. § 7202. (Pet. at 9). Potarazu contends that "613 days of [FSA Time Credit] have been earned and further that 365 days have been applied to supervise release and 238 days will be applied Pre-Release Custody." (Id.). Potarazu argues that if his sentence was recalculated immediately, he would be eligible for release to home confinement "on or about 8/26/22." (Id.). Potarazu argues that the BOP is statutorily required to recalculate his sentence to apply the FSA credits by a particular date and to transfer him to pre-release custody immediately upon elibibility. (Id.).

The Warden filed a Motion to Dismiss, or in the Alternative, for Summary Judgment on December 12, 2022, arguing that: (1) the BOP is not in violation of any statutory

timeline for calculating credits; and (2) the Court does not have the authority to mandate a prisoner's assignment to a halfway house because the BOP maintains the duty to designate inmate custody placement. (Mem. Supp. Mot. Dismiss ["Mot. Dismiss"] at 4, 10, ECF No. 21-1).

In support thereof, the Warden submitted the Affidavit of Robert Gray, Jr., a BOP Case Manager, which outlines Potarazu's history with regard to sentence calculations and time credits, as well as explaining the process behind those calculations. (Gray Aff. at 2–8, ECF No. 21-3). Gray explains that on December 11, 2019, the BOP determined that Potarazu was eligible to receive time credits pursuant to the FSA. (Gray Aff. ¶ 5, ECF No. 21-3). On October 5, 2022, Potarazu attended a review after which he was determined to be at a minimum risk level according to the BOP's Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). (Id. ¶ 6). On October 5, 2022, Potarazu's time credits were automatically calculated under the FSA, and on October 27, 2022, he was recommended for placement in a halfway house beginning on November 15, 2022. (Id. ¶¶ 9−10). The BOP's recalculation of Potarazu's credits as of October 5, 2022, determined that he was entitled to "645 (total FSA credit days) – 259 (maximum number of days he can receive towards release since he is under 18 months from his release date) = 386 remaining FSA credit days . . . that may be applied towards prerelease custody." (Id. ¶¶ 27−28).

Potarazu filed an Opposition on December 16, 2022, and a Supplemental Opposition December 27, 2022, arguing that the timing of the recalculation and subsequent referral to and placement in a halfway house is contrary to law, and that he should be placed in

prerelease custody no later than December 31, 2022. (Opp'n Mot. Dismiss at 5, ECF No. 23; Supp. Opp'n Mot. Dismiss at 1, ECF No. 25). In his Oppositions, Potarazu does not appear to contest the actual calculation of credits, but rather the failure of the BOP to immediately place him in a halfway house upon eligibility. (Id.).

On March 2, 2023, counsel for the Warden filed Correspondence and a Second Affidavit by Gray informing the Court that Potarazu's FSA time credits were recalculated again on February 10, 2023, crediting him with 365 days toward supervised release and 205 days of prerelase custody, for a total of 570 days. (Supp. Gray Aff. ["2d Gray Aff."] ¶ 6, ECF No. 33).[2] Gray also reported that Potarazu was assigned placement in a halfway house for May 18, 2023. (Id. ¶ 9). The Warden suggests that the Petition is now moot, particularly with regard to Potarazu's demand for placement in a halfway house. (Mar. 2, 2023 Correspondence at 2, ECF No. 33). Potarazu filed a Response to the Warden's Correspondence arguing that the most recent recalculation is incorrect and that, even if it were correct, the required date for transfer to a halfway house would be April 27, 2023, not May 18, 2023 as the Warden suggests. (Mar. 6, 2023 Correspondence at 1−2, ECF No. 35).

On May 16, 2023, the Court received notification from Potarazu that he would be transferred to a halfway house on May 18, 2023. (Notice of Change of Address at 1). The BOP inmate locator reflects that Potarazu is currently in the custody of the Residential Reentry Management field office in Baltimore, Maryland, and scheduled to be released from custody on December 23, 2023. See BOP Inmate Locator,

---

[2] Gray's Second Affdavit begins on page four of ECF No. 33 and citations to the Affdavit refer to paragraph numbers therein.

4

https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited August 10, 2023).

## II. DISCUSSION

### A. The First Step Act

Only the Attorney General, acting through the BOP, may administer a federal inmate's sentence. See 18 U.S.C. § 3621; United States v. Wilson, 503 U.S. 329, 335 (1992). This includes determining where an inmate serves his sentence as well as time credit. See 18 U.S.C. § 3621(b); Wilson, 503 U.S. at 335. "A claim for credit against a sentence attacks the computation and execution of the sentence rather than the sentence itself." United States v. Miller, 871 F.2d 488, 490 (4th Cir. 1989). Such challenges must be brought in a petition for habeas corpus relief under 28 U.S.C. § 2241 in a prisoner's district of confinement. Id.; Fontanez v. O'Brien, 807 F.3d 84, 87 (4th Cir. 2015) (recognizing "attacks on the execution of a sentence are properly raised in a § 2241 petition").

The FSA, P.L. 115-391, § 102(b)(1), 132 Stat 5194, 5210 (Dec. 21, 2018), as amended 18 U.S.C. § 3621, governs the calculation of federal prison sentences. Section 102(b) of the FSA, as amended 18 U.S.C. § 3624(b), allows federal inmates to earn additional good time credits. See P.L. 115-391, § 102(b)(1). The FSA, among other things, allows the BOP to award inmates a maximum of 54 days of good time credits per year of their imposed sentence rather than 54 days of credit per year of their sentence served. See Pizarro v. White, 2019 WL 1922437, at *1 (M.D.Pa. Apr. 30, 2019).

The FSA was enacted on December 21, 2018. See 18 U.S.C. § 3632. The statute allows eligible inmates[3] who successfully complete evidence-based recidivism reduction programs ("EBRRs") or productive activities ("PAs") to receive earned time credits ("ETCs") to be applied toward time in pre-release custody or supervised release. See 18 U.S.C. § 3632(d)(4)(A). An inmate may earn ten days of credit for every thirty days of successful participation in EBRRs or PAs. See id. Additionally, eligible inmates who have been assessed at a minimum or low risk of recidivism, who maintain their low risk of recidivism over two consecutive assessments, may earn an additional five days of time credit for every thirty days of successful participation. See id.

Importantly, the FSA directs that:

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 2624(g),[4] into prerelease custody or supervised release.

18 U.S.C. § 3632(4)(C). It is this mandate that Potatrazu claims required the BOP to transfer him to prerelease custody immediately upon eligibility. However, the statute also allows for the Director of the BOP to apply the FSA credits by transferring a prisoner to begin a term of supervised release at an earlier date, not to exceed twelve months. 18 U.S.C. § 3624(g)(3).

---

[3] To be eligible to earn ETCs, inmates must not have a conviction for a disqualifying offense. See 18 U.S.C. § 3632(d)(4)(D). Additionally, deportable non-U.S. citizens are not eligible for ETCs. 18 U.S.C. § 3632(d)(4)(E).

[4] 18 U.S.C. § 2624(g) sets forth the parameters for a prisoner's eligibility for and transfer to prerelease custody and early supervised release.

6

Within 210 days of enactment of the FSA, the Attorney General was charged with developing and releasing a Risk and Needs Assessment System ("the System"). Id. The System is for: (1) determining an inmate's risk of recidivism; (2) assessing an inmate's risk of violence or serious misconduct; (3) determining the type and amount of EBRRs appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and PAs as needed; (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release. See id. § 3632(a). Further, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs." Kurti v. White, No. 1:19-cv-2109, 2020 WL 2063871, at *4 (M.D.Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)).

On July 19, 2019, the System was released for use throughout the BOP in compliance with the timeline set in the FSA. See Holt v. Warden, 539 F.Supp.3d 1005, 1010 (D.S.D. 2021). Thereafter, within 180 days, the BOP was to implement and complete an initial intake risk and needs assessment for each prisoner. 18 U.S.C. § 3621(h)(1)(A). On January 15, 2020, the BOP announced that all inmates had been screened using the PATTERN System. Holt, 539 F.Supp.3d at 1010. The phase of implementation of the FSA, a two-year phase-in period for providing EBRRs and Pas, commenced after all inmates had been screened. 18 U.S.C. §§ 3621(h)(2)–(3). During the phase-in period, the BOP had until January 15, 2022 to provide EBRRs and Pas to all inmates. Id. § 3621(h)(2).

7

Thereafter, on January 19, 2022, the BOP published and codified its "procedures regarding the earning and application of Time Credits as authorized by the First Step Act of 2018" (the "January Final Rule"). See FSA Time Credits, p.1, 87 Fed.Reg. 12, 2705 (January 19, 2022) (codified at 28 C.F.R. § 523). Notably, under the BOP procedures, eligible inmates received retroactive time credits for programming and activities they participated in beginning on December 21, 2018, the date of the FSA's enactment. Id. In determining how to award ETCs during the period before individualized risk and needs assessments had been completed for every inmate (from the FSA's enactment on December 21, 2018 until January 14, 2020), the BOP, in its discretion, determined that eligible inmates will be afforded a "presumption of participation" for that period and will be awarded ETCs accordingly. Id.

**B.     Analysis**

    **1.     The Warden's Dispositive Motion**

Potarazu seeks calculation and application of his time credits pursuant to the FSA as well as immediate placement in prerelease custody. (Pet. at 9). The Warden's Motion to Dismiss, or in the Alternative, for Summary Judgment argues that the credits have been calculated and applied, and that he is not entitled to immediate placement in a halfway house because the BOP has discretion over inmate placement. (Mot. Dismiss at 1).

Rule 5(a) of the Rules Governing Section 2254 Cases in the United States District Courts calls for the filing of an answer, not a dispositive motion.[5] Although this Court

---

[5] Rule 1(b) also permits this Court to apply any or all of the rules governing § 2254 cases to habeas corpus petitions not otherwise covered by the rules.

could deny the improperly filed Motion and instead construe it as an answer, the Court cannot rule on the merits of the Petition at this time, even construing the Motion as an Answer, because there is insufficient information in the record to do so.

The record reflects that Potarazu is currently in prerelease custody in a halfway house as of May 18, 2023. (Notice of Change of Address at 1). Therefore, the Warden is correct that the Petition is moot as to the issue of placement in prerelease custody. However, the calculation and application of Potarazu's FSA credits has been a moving target throughout the duration of this case, and Potarazu is correct when he suggests that it would be impossible for the Court to determine the correct calculation of credits based on the current record. (See Resp. Correspondence at 2, ECF No. 35). As Potarazu points out, his calculation changed from 645 credits on October 5, 2022 to 570 credits on February 10, 2023, apparently due to a "change in policy" which the Warden does not explain. (See id. at 1). Notwithstanding the reduction in credits from 645 to 570, Potarazu's release date was moved up from April 7, 2024 to December 23, 2023, again, without explanation.[6] These changes and ambiguities make it impossible for the Court to determine whether Potarazu has received an accurate calculation and a proper application of his FSA credits as he demands in his Petition. Furthermore, Potarazu also contests the timing of his placement in a halfway house, arguing that the BOP was required to transfer him to prerelease custody as soon as he became eligible. (Pet. at 11–12). Other than arguing that the BOP has

---

[6] In a filing titled "Supplement to Motion for Mandamus," Potarazu stated that his credits were calculated again on May 7, 2023, and that he was credited with 365 days toward supervised release and 400 days toward prerelease custody. (Supp. Mot. Mandamus at 1, ECF No. 51).

9

discretion over an inmate's placement, the Warden does not address Potarazu's position that the FSA requires placement in prerelease custody immediately upon eligibility.[7]

The Warden will be required to file an Answer to the Petition outlining which of the numerous calculations of Potarazu's FSA time credits is correct, and shall include an explanation of why he maintains that calculation is correct. In addition, the Warden should explain why he believes the application of Potarazu's FSA credits to prerelease custody and supervised release was correct and in accordance with the law.

2. **Potarazu's Motions**

   a. **Motion of Objection to Extension and Reconsideration of Due Date**

Potarazu objects to the granting of an extension of time from October 26, 2022 to December 12, 2022 for the Warden to answer the Petition and asks the Court to reconsider the due date. (Mot. Obj. Extension at 1, ECF No. 18). It is clear from the facts outlined above that the BOP was processing Potarazu's recalculation of FSA credits and referral to a halfway house during the time period immediately prior to the initial due date. The extension of time was reasonable to ensure that the Warden's response included all relevant information and events. The Motion is accordingly denied.

---

[7] Notably, Potarazu argues that the statute requires placement in prerelease custody, whereas the statute states that the BOP shall transfer eligible inmates to prerelease custody or supervised release. 18 U.S.C. § 3632(c) (emphasis added). This distinction is not acknowledged by Potarazu nor addressed by the Warden. However, it appears that the February 10, 2023 calculation may account for Potarazu's FSA credits by transferring him to supervised release as early as permissible (twelve months), thereby resulting in a shorter period of prerelease custody. (See Mar. 2, 2023 Correspondence at 1). The Warden does not provide sufficient information to discern whether this is, in fact, what happened in Potarazu's case or whether it is in accordance with the FSA.

### b. Motion for Summary Judgment

Potarazu moves for summary judgment asking the Court to find in his favor on the merits of his Petition. (Pet'r's Mot. Summ. J. at 1, ECF No. 19). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 247).

Here, material factual disputes remain as to the proper calculation and application of Potarazu's FSA time credits. Therefore, the Motion for Summary Judgment is denied without prejudice.

      c.     **Motion for Expedited Ruling**

Potarazu asks for an expedited ruling on the Warden's dispositive Motion on December 16, 2022. (Mot. Expedited Ruling at 1, ECF No. 24). Potarazu filed an Opposition the same day and filed a Supplemental Response eleven days later. (ECF Nos. 23, 25). As described above, the ongoing changes to BOP policy and Potarazu's time

credits calculations would have made an expedited ruling premature and thus the Motion is denied.

### d.    Motion for Request for Emergency Judicial Notice and Hearing

Potarazu filed a motion styled "Motion for Request for Emergency Judicial Notice and Hearing Under Rule 201(B)(E)." (ECF No. 26). Potarazu appears to ask the Court to take judicial notice of certain facts in his case and apply them to the law as he sees it. (Mot. Req. Emergency Judicial Notice at 1, ECF No. 26). Essentially, this Motion is an abbreviated version of his Motion for Summary Judgment, and he also makes the same arguments in the original Petition. (See ECF Nos. 1, 19). Thus, for the reasons stated above, the Motion is denied.

### e.    Motion for Preliminary Injunction

Potarazu filed a Motion for Preliminary Injunction and supplement, requesting that the Court order the BOP to "correct the errors made in as it pertains to the risk assessments and provide a new calculation to the Court within 72 hours with a detailed explanation of the changes." (Mot. Prelim. Inj. at 3, ECF No. 27; Suppl. Mot. Prelim. Inj. at 2, ECF No. 28). Alternatively, Potarazu requests a hearing or granting of his Motion for Summary Judgment. (Mot. Prelim. Inj. at 3).

"A preliminary injunction is an 'extraordinary and drastic remedy.'" See Munaf v. Geren, 553 U.S. 674, 689–90 (2008) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2948, at 129 (2d ed. 1995)). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering

irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) that the injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see also The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346–47 (4th Cir. 2009). To demonstrate a likelihood of irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Med. Grp., 952 F.2d 802, 812 (4th Cir. 1991). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. See Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22.

Additionally, in the context of preliminary injunctions sought by prison inmates:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. § 3626(a)(2).

Here, Potarazu summarily and without support states that he has met all of the required factors for preliminary injunction. (Mot. Prelim. Inj. at 3). However, he has not made a sufficient showing to support the extraordinary measure of granting a preliminary injunction. Therefore, the Motion is denied.

### f. Motion to Order Disclosure and Discovery

Potarazu filed a motion styled as a "Motion to Order Disclosure and Discovery" asking the Court to order:

> Discovery and [d]isclosure of documents and communications between all parties of BOP involved in the administration, calculation and application of the FSA Time Credits for Potarazu since December 21, 2018 to present and for the BOP to immediately file an accurate FSA Credit Assessment and Sentence Computation no later than Wednesday February 8th.

(Mot. Order Disclosure at 1, ECF No. 29). However, discovery is not available as a matter of right in habeas corpus cases. Brooks v. Bivens, No. GJH-21-2221, 2022 WL 4104180, at *6 (D.Md. Sept. 8, 2022) (quoting Bracy v. Gramley, 520 U.S. 899, 904 (1997)). Rule 6(a) of the Rules Governing § 2254 cases provides, in relevant part, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." A federal habeas petitioner establishes the requisite good cause to conduct discovery "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Brooks, 2022 WL 4104180, at *6 (quoting Bracy, 520 U.S. at 908–09). "Good cause" requires more than a petitioner's conclusory assertion there may be some undiscovered or undisclosed evidence to support his claim. Brooks, 2022 WL 4104180, at *6. The rules governing discovery in habeas corpus cases

15

do not support fishing expeditions. Id. (quoting Borden v. Allen, 646 F.3d 785, 810 n.31 (11th Cir. 2011)); see also Williams v. Bagley, 380 F.3d 932, 974 (6th Cir. 2004) ("Rule 6 does not sanction fishing expeditions based on a petitioner's conclusory allegations. Conclusory allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact."). Because the vast amount of information requested by Potarazu amounts to a fishing expedition, the Motion is denied without prejudice.

        g.        **Motion for Sanctions**

Next, Potarazu filed a motion for sanctions against the Warden arguing that he provided false evidence to the Court, although it is unclear what evidence he refers to. (Mot. Sanctions at 1, ECF No. 30). Under Federal Rule 11(c)(1), this Court may "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." It appears that Potarazu believes that some of his records have been deleted, and he therefore questions the accuracy of the FSA time credit calculations. (Mot. Sanctions at 1). However, Potarazu offers no basis for his belief that any records have been lost, nor does he identify what rule the Warden supposedly violated. Accordingly, the Motion will be denied.

        h.        **Second Motion for Appointment of Counsel**

In his Second Motion for Appointment of Counsel, Potarazu asks that the Court appoint counsel because "[b]ased on the numerous inconsistencies in sworn affidavits, destruction of official records and persistent errors in calculations of time credits" he

requires counsel to assist with discovery.[8] (Mot. Appoint Counsel at 1, ECF No. 32). As previously explained, Rule 8(c) of the Federal Rules Governing Habeas Corpus[9] allows for appointment of counsel if an evidentiary hearing is required. No such hearing is necessary at this time, and, therefore, the Motion will be denied without prejudice.

### i.      Emergency Motion to Issue Writ of Mandamus

Potarazu filed a Motion to Issue Write of Mandamus and a Supplement asking the Court to order BOP to transfer him to pre-release custody and to apply 735 days of time credits. (Emergency Mot. Issue Writ at 4, ECF No. 43; Suppl. Emergency Mot. Issue Writ at 1, ECF No. 51). This is essentially the same relief Potarazu requests in his Petition.

Under 28 U.S.C. § 1361, the federal district courts have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or one of its agencies to perform a duty owed to a petitioner. In order to meet the requirements for mandamus relief, a petitioner must show that: (1) he has the clear legal right to the relief sought; (2) the respondent has a clear legal duty to do the particular act requested; and (3) no other adequate remedy is available. See In re First Fed. Sav. & Loan Ass'n of Durham, 860 F.2d 135, 138 (4th Cir. 1988); Asare v. Ferro, 999 F.Supp. 657, 659 (D.Md. 1998). The failure to show any of these prerequisites defeats a district court's jurisdiction under 28 U.S.C. § 1361. See Nat'l Ass'n of Gov't Emps. v. Fed. Lab. Rels. Auth., 830 F.Supp. 889, 898 (E.D.Va. 1993).

---

[8] This Motion also purports to serve as a supplement to Potarazu's prior Motion for Discovery. (See Mot. Appoint Counsel at 1).

[9] See also Rule 1(b) permitting this Court to apply any or all of the rules governing § 2254 cases to habeas corpus petitions not otherwise vocered by the rules.

17

A Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is an alternative means by which Potarazu can gain the relief requested. Indeed, Potarazu has requested such relief in the instant Petition. A writ of mandamus cannot issue if there remains alternative means for relief. In re Propst, 19 F.App'x 132 (4th Cir. 2001) (denying a petition for writ of mandamus because a writ of habeas corpus is the proper vehicle for contesting a conviction). Therefore, Potarazu has not satisfied all of the requirements for issuance of a writ of mandamus, and the Motion must be denied.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny the Warden's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 21) without prejudice. The Warden will be required to file an Answer as directed above. Plaintiff's Motions will also be denied. A separate Order follows.

Entered this 20th day of September, 2023.

/s/
George L. Russell, III
United States District Judge